IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARKAY GARCIA, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | NO. 5-24-CV-01099-JKP-RBF |
| | § | JURY DEMANDED |
| NORTHSIDE INDEPENDENT SCHOOL | § | |
| DISTRICT, KYLE KENNEDY, and | § | |
| JOSEPH GARCIA, | § | |
|     Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT[1]

Plaintiff, MARKAY GARCIA ("Plaintiff") complains of and about Defendants NORTHSIDE INDEPENDENT SCHOOL DISTRICT (NISD), KYLE KENNEDY, and JOSEPH GARCIA, and for cause of action would respectfully show the Court and Jury as follows:

### 1.    NATURE OF THE ACTION

1.    This is an action brought by Plaintiff against the NISD, Kennedy, and Garcia for their use, under color of state law, of excessive, unreasonable deadly force, resulting in severe injuries to Markay Garcia in violation of her individual rights under Fourth Amendment of the United States Constitution and in violation of her civil rights pursuant to 42 U.S.C. § 1983.

2.    Specifically, Officers Kennedy and Garcia, acting under color of state law, stopped Plaintiff for no good or lawful reason as she was attempting to park to attend a high school football game. Both Officers stopped Plaintiff's vehicle and Defendant Kennedy immediately resorted to the use of deadly force, all while Plaintiff was in fear of the officers and attempting at all times to comply with their frantic orders. The unwarranted seizure of Plaintiff ended with Officer Kennedy shooting Plaintiff through her driver's side, open window, a shot that hit Plaintiff's right arm,

---

[1] This amended complaint is being filed pursuant to the Court's Standing Order in Civil Cases and within seven days of the date Plaintiff notified the Court of her intent to do so. (Doc. 3 at ¶ 1(2); Doc. 7).

severely injuring it and permanently damaging Plaintiff.  Plaintiff was never charged with any crime.  On November 13, 2024, however, Defendant Kennedy was indicted by a Bexar County grand jury for (1) aggravated assault with a deadly weapon by a police officer, (2) deadly conduct, and (3) official oppression.  Defendant Kennedy has since been arrested and released on bond.

3.      For its part, the NISD and its policymakers, specifically the NISD Superintendent of Schools, Dr. John M. Craft, and the NISD School Board Members (collectively, the "NISD Policymakers") made this situation possible and probable when they hired Officer Kennedy in spite of numerous red flags from his prior job with the Live Oak Police Department and, once hired, failed to properly supervise and train Officer Kennedy.  Without adequate supervision and training, it should have come as no surprise to NISD that Officer Kennedy ended up using excessive, deadly force against Plaintiff.  The NISD has since ratified the Officers' conduct by refusing to discipline Kennedy or Garcia for their conduct, even in the face of the criminal indictment of Kennedy.

## 2.      **PARTIES**

4.      Plaintiff MARKAY GARCIA is an individual who is a citizen of the United States and a resident of Bexar County, Texas.

5.      Defendant, KYLE KENNEDY, is a resident of Bexar County, Texas, and at all relevant times, was acting in the scope of his employment and under color of state law and is sued in his individual capacity.  Defendant KENNEDY has been served with process and entered an appearance through his counsel.

6.      Defendant, JOSEPH GARCIA, is a resident of Bexar County, Texas and at all relevant times, was acting in the scope of his employment and under color of state law and is sued in his individual capacity. Defendant GARCIA is a law enforcement officer employed by NISD in

its Police Department and has been served with process and entered an appearance through his counsel.

7.     Defendant NORTHSIDE INDEPENDENT SCHOOL DISTRICT ("NISD") is a public school district and a political subdivision of the State, that is headquartered in Leon Valley, Bexar County, Texas. The NISD has been served with process and entered an appearance through its counsel.

### 3.     JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a) as this action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 seeking redress for the violation of Plaintiff's federal Constitutional rights and civil rights under the Fourth Amendment of the U.S. Constitution and the Fourteenth Amendment of the U.S. Constitution.

9.     Venue is proper in this Court because all of the acts or omissions giving rise to the Plaintiff's causes of action occurred within the San Antonio Division of the Western District of Texas.

### 4.     CONDITIONS PRECEDENT

10.     All conditions necessary for the maintenance of this action have been performed or have occurred, including notice and exhaustion of administrative remedies, if any.

### 5.     STATEMENT OF FACTS

11.     Plaintiff Markay Garcia is a licensed physician's assistant; the mother of an elementary school age child; and married to John Garcia, an assistant football coach and history teacher at NISD's Sotomayor High School. Just weeks before the incident that is the subject of this lawsuit, Plaintiff had celebrated her 37th birthday and was enjoying a successful medical practice in San Antonio with a prominent orthopedic group. She has never been arrested for, or

3

convicted of, a crime. Plaintiff is not a violent criminal, nor does she have a history of violent crime. Her driving record is benign with two speeding citations in the past 10 years.

12.    On Saturday, October 28, 2023, the NISD Dub Farris Athletic Complex (the "Stadium") was a hive of enthusiastic students, parents, children, and fans preparing for the kickoff of the football game between rival NISD high schools Sotomayor and O'Connor. At approximately 1:30 p.m., Plaintiff pulled her Toyota Highlander SUV into the "Home" side of the Stadium parking lot to find a parking spot and make her way into the Stadium for her husband's football game. Plaintiff regularly attends the football games her husband coaches, and she is known by NISD staff at the games because of her husband's coaching position. John Garcia was already inside the Stadium with his team and the coaching staff.

***Aerial View of Farris Stadium and Parking Lot with Plaintiff's Driving Path:***



13.    As Plaintiff entered the parking lot, there was a line of cars in front of her.  As she slowly approached the crosswalk at the entrance of Farris Stadium in her Toyota SUV, one of the vehicles ahead of her drove through the crosswalk without stopping and without being stopped by the NISD officers. Plaintiff then stopped her Toyota SUV behind a line of approximately four other vehicles in front of her, as those cars waited for pedestrians to walk across the crosswalk towards the entrance of Farris Stadium. Plaintiff observed multiple families with children at the entrance of the Farris Stadium gate.

***View of Parking Lot, Home Team Entrance Gate, and Crosswalk Looking South:***



*View of Parking Lot, Home Team Entrance Gate, and Crosswalk:*



14.    At that time, NISD Officers KYLE KENNEDY and JOSEPH GARCIA were conducting traffic control within the stadium parking lot.  It is undisputed that Defendants KENNEDY and GARCIA were acting under the color of law as police officers at the time, within the course and scope of employment by the NISD Police Department.

15.    After briefly waiting for pedestrians to cross the crosswalk, the first vehicle that was stopped at the crosswalk drove forward and crossed the crosswalk without being stopped by the NISD officers. The second vehicle unloaded a female passenger, who exited and walked across the street to the Farris Stadium entrance gate. The second vehicle then drove forward and crossed

the crosswalk without being stopped by the NISD officers. Then, the third vehicle drove forward and moved to the left side before the crosswalk, without being stopped by the NISD officers.

16.    As Plaintiff began to drive her vehicle forward like the other cars before her had done towards the crosswalk, Defendant KENNEDY suddenly positioned himself directly in front of Plaintiff's vehicle, causing Plaintiff to stop her vehicle. There were no pedestrians in the crosswalk or waiting to cross the crosswalk and Plaintiff saw no other reason for Defendant KENNEDY to step in front of her vehicle.

17.    At the same time, Defendant GARCIA moved towards the passenger side of Plaintiff's vehicle and started knocking on the front passenger-side window, yelling at Plaintiff to "calm down." Plaintiff rolled her passenger-side window down and responded that she was calm and just wanted to watch her husband's football game.

18.    Plaintiff attends all of her husband's football games, and she is known by the staff at the football games because of her husband's coaching position with the Sotomayor High School football team. All observable circumstances indicated that Plaintiff was simply trying to park her vehicle so she could enter the Stadium to watch the game, just like every vehicle that had entered the parking lot without incident ahead of her to park and enter Farris Stadium to watch the game. Plaintiff was doing nothing wrong when she was stopped by the Officers and she had broken no laws.  Plaintiff clearly was not a threat to anyone and certainly not an immediate threat to the Officers.

19.    Not seeing any reason for the officers to stop her vehicle, and receiving no further instructions from the Officers, Plaintiff then attempted to slowly drive forward. But when she turned her wheel to move her vehicle around Defendant KENNEDY, Defendant KENNEDY

repositioned himself to block her vehicle from passing, at which point Plaintiff stopped her vehicle again.

20.    When Defendant KENNEDY forced Plaintiff's vehicle to stop again, Defendant GARCIA approached Plaintiff again, but this time from the driver-side window, yelling at Plaintiff to "get out of the vehicle." Plaintiff rolled down the driver-side window and responded that there was no reason to get out of the vehicle and that she just wanted to watch her husband's football game. At the same time, Defendant KENNEDY, who was still standing in front of Plaintiff 's vehicle, also began yelling at Plaintiff. As he was yelling at Plaintiff, Defendant KENNEDY violently threw his water bottle down on the ground with his right hand, and positioned his left hand on his service firearm.

21.    There was no reasonable suspicion to support Defendants KENNEDY or GARCIA stopping or forcefully detaining Plaintiff to investigate any potential crime; and there certainly was no probable cause for Defendants KENNEDY or GARCIA to forcefully detain Plaintiff's vehicle to arrest Plaintiff, nor any cause to draw service firearms.

22.    Nonetheless, Defendant GARCIA suddenly reached inside of Plaintiff's open driver-side window. At that point, Defendant KENNEDY rapidly moved from the front of Plaintiff's vehicle and also approached the driver's side of Plaintiff's vehicle.  Defendant GARCIA's action startled Plaintiff, causing her to release her foot off the brake pedal, which in turn caused Plaintiff's vehicle to move forward slightly.  When Plaintiff realized that her car had moved slightly, she immediately attempted to put her foot back on the brake pedal to stop its motion.

23.    At the same time, Defendant KENNEDY left the front of Plaintiff's vehicle and walked around to the driver's side of her vehicle, approaching Defendant GARCIA and Plaintiff

at her driver's side window. Suddenly and unexpectedly, Defendant KENNEDY unholstered his service firearm, pointed it at Plaintiff either just outside or slightly inside her open driver-side window, and pulled the trigger, shooting Plaintiff at point-blank range. The bullet from Defendant KENNEDY's firearm entered Plaintiff's upper right arm, shattered and fractured her humerus, destroyed her triceps muscles, and caused permanent nerve damage. Defendant KENNEDY never made any effort to use less force, or defuse the situation, and resorted immediately to deadly force against Plaintiff.  Defendant GARCIA, who never saw the need to draw his firearm but witnessed Defendant KENNEDY pulling his, did nothing to stop Defendant KENNEDY from shooting Plaintiff.



24.    This unlawful seizure and deadly use of force used by Defendants KENNEDY and GARCIA to restrain Plaintiff's liberty and freedom of movement was excessive, clearly and objectively unreasonable, and clearly and objectively a violation of Plaintiff's constitutional rights to be free from unreasonable seizure and to be free from the use of excessive and unwarranted force.

25.    It was apparent at all times during the incident that Plaintiff did not have any weapons in the vehicle, was not a suspect of any crime, and did not pose any immediate threat to

herself, the Officers, or others. Considering the totality of the circumstances, both NISD officers' conduct in this incident was objectively unlawful and unreasonable, and the use of deadly force was completely unjustified and unreasonable. Nonetheless, both Officers received no discipline as a result of this incident and remain employed by NISD at this time.

26.    Despite Defendant KENNEDY's knowledge that Plaintiff was not an immediate threat, was not suspected of a crime, did not have a weapon in her vehicle and was not suspected of having a weapon, and despite the almost certain risk of shooting other innocent bystanders, including children, trying to park and/or walk into the high school football game, Defendant KENNEDY acted objectively unreasonably when he drew his service firearm and shot Plaintiff in clear violation of Plaintiff's rights to be free from unreasonable seizure and to be free from the use of excessive and unwarranted deadly force.

27.    Despite Defendant GARCIA's knowledge that Plaintiff was not a threat, was not suspected of a crime, and did not have a weapon in her vehicle and was not suspected of having a weapon, Defendant GARCIA acted objectively unreasonably when he participated in the unlawful seizure of Plaintiff. Defendant GARCIA could contemporaneously perceive Defendant KENNEDY's actions and could see that Defendant KENNEDY was about to clearly use excessive and unwarranted force to shoot Plaintiff with his service firearm. Defendant GARCIA had an opportunity to stop Defendant KENNEDY from shooting Plaintiff and needlessly endangering other innocent families in the area. But Defendant GARCIA did not take reasonable measures to protect Plaintiff or the other families in the immediate area from NISD Officer KYLE KENNEDY's use of excessive, deadly force. Defendant GARCIA violated Plaintiff's rights to be free from unreasonable seizure and free from the use of excessive and unwarranted force.

28.     Defendant KENNEDY's reckless, unreasonable, and unlawful actions caused Plaintiff to suffer serious and permanent injuries to the structures and nerves in her right arm. The bullet from Defendant KENNEDY's service firearm shattered and fractured Plaintiff's humerus, destroyed her triceps muscles, and caused permanent nerve damage. Attempted repair of Plaintiff's arm has involved surgery, placement of permanent hardware, and extensive physical and occupational therapy. Plaintiff may never again regain full functional use of her right arm and hand. She is right hand dominant, and these injuries have greatly affected all aspects of her life, including her professional medical practice and her roles as mother and spouse.

29.     Following the incident, Plaintiff was never charged with any crime.  Defendant KENNEDY, however, was criminally charged and those charges were presented to a Bexar County grand jury on November 13, 2024.  That same day, the Bexar County grand jury returned indictments against Defendant KENNEDY for (1) first degree felony aggravated assault with a deadly weapon by a police officer, (2) third degree felony deadly conduct, and (3) misdemeanor official oppression.  Despite this charge and the unlawful conduct of both Officers involved in the encounter with Plaintiff, neither Officer has ever been disciplined or otherwise reprimanded for their conduct, or even received further training or supervision, by the NISD.  In short, the NISD has ratified the Officers conduct, sending a message to all other NISD officers that what these Officers did was appropriate conduct.

30.     Because of the acts of Defendants, Plaintiff has suffered and continues to suffer from, general, special, and consequential damages, all allowed by law and recoverable.

## 6.    CAUSES OF ACTION

A.    **First Cause of Action against Defendant Kennedy under 42 U.S.C § 1983 for Violation of Plaintiff's Fourth Amendment Constitutional Right to be Free from Excessive Force.**

31.    Each of the preceding paragraphs is incorporated herein as if set forth in full.

32.    Plaintiff would show that she was severely injured as a direct result of Defendant KENNEDY's use of deadly force that was clearly excessive and the excessiveness of which was clearly unreasonable. That is, Defendant KENNEDY, without justification and the need to do so, used excessive deadly force as described above and seriously injured Plaintiff without legal justification. Defendant KENNEDY's use of force was clearly excessive and clearly unreasonable because Plaintiff never made any threatening gestures toward Defendant KENNEDY or any other person, was not actively resisting and did not pose an immediate threat to the safety of Defendant KENNEDY or others.   The excessive deadly force used by Defendant KENNEDY was not reasonable or justified, nor was it necessary under the circumstances. Rather, Defendant KENNEDY embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Plaintiff to suffer extreme and severe physical pain, mental and emotional distress, agony, and anxiety.

33.    Defendant KENNEDY's actions were not objectively reasonable because Plaintiff did not pose an immediate risk of serious physical harm to Defendant KENNEDY or any other person and was not actively resisting.

34.    Further, Defendant KENNEDY's conduct violated a clearly established constitutional right—the right to be free from excessive, deadly force—that was established well before Defendant KENNEDY shot Plaintiff in the arm.   With regard to Defendant KENNEDY's use of deadly force, the law is clearly established that such force is excessive.   Clearly established

law requires an officer to "assess the relationship between the need and the amount of force used" and physical force is not justified when the officer fails to negotiate with a suspect but resorts quickly to force, without employing other, less violent means when the suspect's behavior cannot be considered active resistance.  *See Darden v. City of Fort Worth, Tex.,* 880 F.3d 722, 731 (5th Cir. 2018); *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012); *Deville v. Marcantel,* 567 F.3d 156, 168 (5th Cir. 2009).  More specifically, "[t]he cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others."  *Reyes v. Bridgewater,* 362 F. App'x 403, 409 (5th Cir. 2009); *see also Lytle v. Bexar Cty., Tex.,* 560 F.3d 404, 417-18 (5th Cir. 2009); *see also Crane v. City of Arlington, Tex.,* 50 F.4th 453, 467 (5th Cir. 2022), *cert. denied sub. nom.,* 144 S. Ct. 342 (2023) ("using deadly force on an unarmed, albeit noncompliant, driver held in a chokehold in a parked car was a constitutional violation beyond debate.").

35.    As a result of these Constitutional violations to Plaintiff and the injuries she sustained, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint titled "Damages."

**B.    Second Cause of Action against Defendants Kennedy and Garcia under 42 U.S.C § 1983 for Violation of Plaintiff Garcia's Fourth Amendment Constitutional Protection from Unreasonable Searches and Seizures.**

36.    Each of the preceding paragraphs is incorporated herein as if set forth in full.

37.    Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of her person.  The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend IV.  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. 386,

395 n.10 (1989) (omissions in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). This may occur through coercion, physical force, or a show of authority. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *see also Dees v. Cty. of San Diego*, 960 F.3d 1145, 1154 (9th Cir. 2020) (holding that seizure occurs if, in view of all circumstances surrounding incident, reasonable person would have believed she was not free to leave). With respect to the Fourth Amendment, the Supreme Court has defined a seizure of a person as "a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo,* 489 U.S. 593, 596-97 (1989) (emphasis in original); *see also Brendlin v. California,* 551 U.S. 249, 254 (2007).

38.     Plaintiff would show that Defendants KENNEDY and GARCIA's actions were intentional and objectively unreasonable and done in bad faith in that it resulted in the wrongful detention and seizure of Plaintiff without probable cause, for no lawful reason. Plaintiff did not commit a crime, was not suspected of a crime, nor had she done anything else that warranted the detention by Defendant KENNEDY and GARCIA when she was unlawfully seized and not allowed to leave.

39.     Plaintiff would further show that she has suffered damages as a result of Defendant KENNEDY and GARCIA's wrongful detention and seizure of her and that such seizure was done under the color of law. Plaintiff would additionally show that such wrongful seizure was done in violation of her rights under the Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff suffered personal injury

and bodily injury damages within the jurisdictional limits of this court as a result of the violations

of her rights as set forth more specifically in the section of this Complaint titled "Damages."

**C.    Third Cause of Action against Defendant GARCIA for Failing to Intervene to Stop Defendant KENNEDY's Use of Excessive, Deadly Force.**

40.    Each of the preceding paragraphs is incorporated herein as if set forth in full.

41.    Plaintiff would show that Defendant GARCIA failed to intervene to stop the

unconstitutional use of excessive, deadly force by Defendant KENNEDY.   A claim of bystander

liability requires the claimant to prove (1) the by-standing officer knew that a fellow officer was

violating an individual's constitutional rights, and (2) the officer had a reasonable opportunity to

prevent the violation, but chose not to act. Bystander liability under § 1983 is based on the principle

that, by choosing not to intervene and prevent an unconstitutional exercise of excessive force, the

passive officer effectively participates in his fellow officer's acts.

42.    Defendant GARCIA had a reasonable opportunity to intervene, but instead they

simply chose not to do anything.

43.    By choosing not to intervene, Defendant GARCIA effectively participated in

Defendant KENNEDY's wrongful acts.

44.    Since at least 1995, it has been clearly established in the Fifth Circuit that an

individual officer is subject to bystander liability under § 1983 if he or she knew a constitutional

violation was being committed by a fellow officer and had a reasonable opportunity to prevent the

harm. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citing *Hale v. Townley*, 45 F.3d

914, 918 (5th Cir. 1995), for principle that "it was clearly established in the Fifth Circuit that an

officer could be liable as a bystander in a case involving excessive force if he knew a constitutional

violation was taking place and had a reasonable opportunity to prevent the harm.").   Likewise, it

was clearly established at the time of the incident that a supervisor is subject to liability under

§ 1983 where the supervisor, with deliberate indifference, failed to act or otherwise prevent the constitutional violations perpetrated by their subordinates. *See, e.g., Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

45.     As a direct and proximate result of Defendants GARCIA's failure to prevent Defendant KENNEDY's violation of Plaintiff's constitutional rights, Plaintiff incurred extreme physical pain and physcial and mental injuries, as well as economic damages, for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**D.    Fourth Cause of Action against Defendant NISD for Failing to Train, Supervise, Discipline Defendants KENNEDY and GARCIA and for Ultimately Ratifying their Conduct.**

46.     Each of the preceding paragraphs is incorporated herein as if set forth in full. NISD is liable for all damages suffered by Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and 42 U.S.C. § 1983 based on an official policy or custom of the NISD of which the Superintendent and the School Board all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

47.     Defendant NISD authorized, approved, permitted, ratified, and tolerated the unlawful, willful, deliberate, malicious, reckless, and wanton conduct of Defendants KENNEDY and GARCIA, thus depriving Plaintiff of her constitutional rights. NISD, the NISD Police Department, and/or its final policymaker (or person who was delegated final policymaking authority and/or final decision-making authority) authorized, approved, permitted, ratified, and tolerated the custom and practice of the unconstitutional acts committed by Defendants KENNEDY and GARCIA.

48.     Defendant NISD's failure to take action that was obviously necessary to prevent or stop the unlawful, excessive, and unconstitutional conduct of NISD Police Department Officers

caused unconstitutional injuries to Plaintiff and constitutes official policy decisions for which NISD is liable.

49.    Defendant NISD authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using below minimum standards for hiring, re-hiring, screening, supervision, training, disciplinary and/or retention decisions regarding police officers like Defendant KENNEDY. The Defendant NISD Policymakers were the final policy making official and were aware of the use of below minimum qualification and hiring standards, re-hiring standards, and either approved such conduct or failed to take corrective action. Defendant NISD was in possession of Defendant KENNEDY's personnel file from his prior employer the City of Live Oak Police Department ("Live Oak PD"), and thus had actual and constructive knowledge of numerous written safety concerns and write-ups involving contact and interaction with the public before hiring and/or re-hiring Defendant KENNEDY and issuing him a service firearm, including:

49.1    That Defendant KENNEDY received numerous written criticisms and concerns about safety while handling calls for service and traffic complaints with Live Oak PD, which warranted a review of his videos, which in turn resulted in Live Oak PD questioning multiple incidents of Defendant KENNEDY's safety, tactics, and decision making ability with the public;

49.2    That after a review of Defendant KENNEDY's interaction with the public, Live Oak PD determined that Defendant KENNEDY's lack of safety and decision making skills could result in injury to himself or the public; and

49.3    That instead of participating in and completing a two-week remedial training program recommended by Live Oak PD in writing, Defendant KENNEDY resigned from Live Oak PD.

50.    Defendant NISD's deliberate indifference in the hiring and/or re-hiring and screening of Defendant KENNEDY, and in failing to adequately train and supervise Defendant KENNEDY once hired, directly caused the violation of Plaintiff's constitutional rights in this incident and directly caused her permanent injuries. Before Defendant KENNEDY was hired

and/or re-hired by Defendant NISD, Defendant KENNEDY's Live Oak PD personnel file (which Defendant NISD received) documented that Defendant KENNEDY's "safety and decision making skills were concerning to the point where [Defendant KENNEDY] could become injured or possibly injure someone else."  It was a highly predictable consequence that Defendant NISD's failure to properly hire, re-hire, and screen Defendant KENNEDY, and issue him a service firearm without adequate training or supervision, would result in Plaintiff Garcia being unlawfully detained and shot by Defendant KENNEDY. These actions by Defendant NISD were a moving force behind Plaintiff's constitutional violations and injuries in this incident.

51.    Given Defendant KENNEDY's background, Defendant NISD had a heightened obligation to train, supervise, and discipline its officers, including Defendant KENNEDY, and failed to do so in the following areas:

51.1    Vehicle contact detainment and seizure procedures and protocols;

51.2    Use of force, excessive force, and deadly force;

51.3    Procedures on service weapon/firearm usage, including but not limited to, deadly force, when to unholster a service firearm, when and how to prepare to discharge a service firearm, when and how to discharge a service firearm, and the proper use of non-lethal weapons or no weapons at all during a public contact;

51.4    De-escalation procedures, protocols, and techniques; and

51.5    Procedures and protocols before taking action, including but not limited to the following: notifying NISD dispatch prior to taking action; notifying SAPD dispatch before taking action; and taking only action that is necessary to contain a situation until an officer of the law enforcement agency with jurisdiction arrives.

52.    Defendant NISD had actual and constructive knowledge that Defendant KENNEDY needed the following specific training and/or re-training before putting him in the field for public contact and issuing him a service firearm:

52.1    That Defendant KENNEDY received numerous written criticisms and concerns about safety while handling calls for service and traffic complaints with

Live Oak PD, which warranted a review of his videos, which in turn resulted in Live Oak PD questioning multiple incidents of Defendant KENNEDY's safety, tactics, and decision making ability with the public;

52.2    That after a review of Defendant KENNEDY's interaction with the public, Live Oak PD determined that Defendant KENNEDY's lack of safety and decision making skills could result in injury to himself or the public; and

52.3    That instead of participating in and completing a two-week remedial training program recommended by Live Oak PD in writing, Defendant KENNEDY resigned from Live Oak PD.

53.    The deliberate indifference during the police officer training program and/or re-training program by Defendant NISD directly caused and was the moving force behind the violation of Plaintiff's constitutional rights and directly caused her permanent injuries. Before Defendant KENNEDY was hired and/or re-hired by Defendant NISD it was documented in writing, in the Live Oak PD personnel file that Defendant NISD received, that "Officer KYLE KENNEDY's safety and decision making skills were concerning to the point where Officer KYLE KENNEDY could become injured or possibly injure someone else." It was also documented in writing, in the Live Oak PD personnel file that Defendant NISD received, that instead of completing the recommended two-week remedial training program with Live Oak PD, that Defendant KENNEDY resigned from Live Oak PD. It was a highly predictable consequence that failing to train or re-train an armed officer, Defendant KENNEDY, regarding the above listed items would result in excessive force on the public and/or an improper use of his service firearm, especially given Defendant KENNEDY's prior documented safety concerns without the proper remedial training. This is exactly what happened in this incident, when Plaintiff was unlawfully detained, and objectively unreasonably shot by Defendant KENNEDY. These actions by Defendant NISD were a moving force behind Plaintiff's constitutional violations in this incident.

54.     Defendant NISD then ratified Defendants KENNEDY and GARCIA's conduct by failing or refusing to discipline these officers or even provide them additional training.  Both officers remain employed by Defendant NISD today, even after one of them (Defendant KENNEDY) was criminally indicted for his conduct *in this case*.  The NISD's after-the-fact ratification shows that the NISD supported these unconstitutional actions at the time they occurred.

55.     The NISD's conduct confirms that the NISD affirmatively acquiesced in, adopted, or sanctions the Officers' conduct and failed to actively enforce its own policies and procedures. It also tends to suggest that it and other policymakers found no inadequacies in the officer's conduct. Such affirmative official action lends itself to the distinct possibility that similar situations that present the potential for constitutional rights violations will occur again in the future because the NISD has tacitly approved of this type of conduct.

56.     When the NISD failed and refused to discipline the Officers for their clearly established constitutional violations, it approved of and ratified that conduct, which itself establishes a custom of the NISD. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009). When an entity like the NISD approves a subordinate's conduct and the basis for it, liability for that conduct is chargeable against the entity because it has "retained the authority to measure the official's conduct for conformance with their policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016); *see also Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017). Under *Praprotnik*, "post hoc ratification by a final policymaker is sufficient to subject a city to liability because decisions by final policymakers are policy."

57.     The failure of the NISD to punish the Defendant Officers or to make any reasonable attempt to implement meaningful changes in light of Plaintiffs injuries emphasizes the point that

this is how things have always been done and the NISD approves of it. The Officers violated Plaintiff's constitutional rights in an egregious manner, which resulted in Plaintiff being seriously and permanently injured. This inexcusable use of deadly force at a school function resulted in no disciplinary action, no retraining, and no reevaluation of policies by the NISD. By doing nothing, the NISD ratified the Defendant Officers' conduct.

**E.    Qualified Immunity Does Not Apply To Any Defendant**

58.    These acts or omissions by Defendants KENNEDY and GARCIA, taken individually or collectively, violated Plaintiff's rights guaranteed by the United States Constitution and were objectively unreasonable considering the totality of the circumstances in this incident. It was unlawful, unconstitutional, objectively unreasonable, and there was no need to stop and detain Plaintiff or Plaintiff's vehicle.  At all times during this incident, Plaintiff did not have a weapon, was not a suspect, was not a threat, and did not pose any immediate threat of harm to herself or others.  Furthermore, it was unlawful, unconstitutional, and objectively unreasonable to shoot Plaintiff with a service firearm.  These constitutional rights that were violated are clearly established by the United States Constitution, U.S. Supreme Court and Fifth Circuit case law (as more specifically cited above), law enforcement training, the policies and procedures of the NISD Police Department and by the Texas Code of Criminal Procedure. Therefore, Defendants KYLE KENNEDY, and JOSEPH GARCIA are not entitled to official immunity. Each of these actions or omissions were singularly, or in combination, the moving force of the Plaintiff's constitutional violations and the cause of her injuries.

59.    The qualified immunity defense does not apply to Defendant NISD.  *Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 133 (5th Cir. 1986); *Kingsville Indep. Sch. Dist. v. Cooper,* 611 F.2d 1109, 1112 (5th Cir. 1980).

## 7.   **PROXIMATE CAUSE**

60.   Each and every of the foregoing acts and/or omissions, on the part of Defendants, taken separately and/or collectively, constitute a direct and proximate cause of the constitutional violations, injuries, and damages set forth below.

## 8.   **DAMAGES**

61.   The damages, which are unliquidated, are within the jurisdictional limits of this Court.

62.   As a proximate result of Defendants' conduct, Plaintiff sustained serious and permanent bodily injuries. As a result, Plaintiff has suffered the following damages:

62.1   Reasonable and necessary medical expenses in the past;

62.2   Reasonable and necessary medical expenses which, in all reasonable probability, will be incurred in the future;

62.3   Physical pain suffered in the past;

62.4   Physical pain which, in all reasonable probability, will be suffered in the future;

62.5   Mental anguish suffered in the past;

62.6   Mental anguish which, in all reasonable probability, will be suffered in the future;

62.7   Physical impairment in the past;

62.8   Physical impairment which, in all reasonable probability, will be suffered in the future;

62.9   Disfigurement suffered in the past;

62.10   Disfigurement which, in all reasonably probability, will be suffered in the future;

62.11   Lost wages in the past and future; and

62.12   Loss of earning capacity in the past and future.

## 9.     <u>PUNITIVE DAMAGES</u>

63.     Punitive/exemplary damages are recoverable under Section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of Defendant KENNEDY was done with evil motive or intent, or at the very least, with reckless or callous indifference to the federally protected rights of Plaintiff Garcia.  Defendant KENNEDY chose to proceed with reckless and callous indifference to the rights of Plaintiff, as well as all of the other families at the Farris Complex entrance when he pointed his firearm at Plaintiff's open driver side window and shot Plaintiff.  As such, Plaintiff requests punitive and exemplary damages from Defendant KENNEDY to deter this type of conduct in the future.

## 10.     <u>ATTORNEY'S FEES</u>

64.     Plaintiff has retained the undersigned attorneys to prosecute this action and Plaintiff hereby seeks the recovery of all reasonable attorney's fees incurred in the prosecution of this matter as provided 42 U.S.C. § 1988, and as provided under applicable law.

## 11.     <u>DEMAND FOR JURY</u>

65.     Plaintiff demands a jury trial and tenders the appropriate fee.

## 12.     <u>PRAYER FOR RELIEF</u>

66.     WHEREFORE, PREMISES CONSIDERED, Plaintiff Markay Garcia prays that Defendants Northside Independent School District, NISD Officer KYLE KENNEDY, and NISD Officer JOSEPH GARCIA be cited in terms of law to appear and answer herein, and that upon final hearing herein, that Plaintiff have and recover judgment of and from the Defendants, jointly and severally, for all of her damages as hereinabove set forth, plus reasonable attorney's fees, costs of court, punitive damages in an amount determined by the trier of fact, pre-judgment interest and

post-judgment interest at the maximum rates permitted by law, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff Garcia may be justly entitled.

Respectfully submitted,

RODRIGUEZ TRIAL LAW
231 W. Cypress St.
San Antonio, Texas 78212
(210) 777-5555; Telephone
(210) 224-0533; Telefax
BY:    _S/ FIDEL RODRIGUEZ, JR._
        FIDEL RODRIGUEZ, JR.
        State Bar No. 17145500
        FIDEL RODRIGUEZ, III
        State Bar No. 24081924

LANG LAW FIRM, P.C.
Northwest Atrium
11550 IH-10 West, Ste. 273
San Antonio, Texas 78230
(210) 783-0322; Telephone
(210) 479-0099; Telefax
BY:    _S/ SYLVAN S. LANG, JR._
        SYLVAN S. LANG, JR.
        State Bar No. 11898700
        BRIAN M. DENNIS
        State Bar No. 24039970
        MEAGAN M. GILLETTE
        State Bar No. 24050659

DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000; Telephone
(214) 946-8433; Telefax
BY:    _/S/ THAD D. SPALDING_
        THAD D. SPALDING
        State Bar No. 00791708
        SHELBY J. WHITE
        State Bar No. 24084086

        ATTORNEYS FOR PLAINTIFF

PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL.

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on **November 27, 2024**, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing ("ECF") system of the Court. The following counsel of record were served via electronic service through the ECF system.

D. Craig Wood, cwood@wabsa.com
Katie E. Payne, kpayne@wabsa.com
**WALSH GALLEGOS KYLE ROBINSON & ROALSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
*Attorneys for Defendants*

*/S/ Thad D. Spalding*
Thad D. Spalding

25