IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARKAY GARCIA,<br>    Plaintiff,<br><br>vs.<br><br>NORTHSIDE INDEPENDENT<br>SCHOOL DISTRICT, KYLE<br>KENNEDY, and JOSEPH GARCIA,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 5:24-CV-01099-JKP-RBF<br><br>JURY DEMAND |

**DEFENDANTS' 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE
A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants file this Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint and show the Court the following:

**I.     STATEMENT OF THE CASE**

1.     Plaintiff Markay Garcia filed suit against Northside ISD and two of its police officers, Kyle Kennedy and Joseph Garcia, for alleged excessive force and unlawful seizure in violation of her rights under the Fourth Amendment to the U.S. Constitution. ECF No. 1. Plaintiff amended her complaint pursuant to the Court's Standing Order in Civil Cases after notice from Defendants of their intent to file a motion to dismiss her Original Complaint for failure to state a claim. ECF No. 9, p. 1, n. 1. This motion to dismiss is filed in accordance with the Court's extension of the deadline to respond to Plaintiff's First Amended Complaint.

**II.     ALLEGED FACTS**

2.     Plaintiff Markay Garcia asserts that on October 28, 2023, NISD police officers Kyle Kennedy and Joseph Garcia were conducting traffic control within the stadium parking lot at the NISD Dub Farris Athletic Complex. ECF No. 9, pp. 4, 6. Plaintiff was driving her vehicle towards the crosswalk

where the officers were conducting traffic and pedestrians were crossing in the crosswalk towards the entrance of Farris Stadium. *Id.* at p. 5. As Plaintiff's vehicle approached the crosswalk, she asserts that Officer Kennedy positioned himself directly in front of her vehicle, causing Plaintiff to stop her vehicle. *Id.* at p. 7. Plaintiff asserts that at the same time, Officer Garcia moved towards the passenger side of her vehicle and began knocking on the front passenger side window, telling her to "calm down." *Id.* Plaintiff asserts that she rolled down that window and responded that she was calm and just wanted to watch "her husband's football game.[1]" *Id.* Plaintiff then attempted to drive around Officer Kennedy, who was standing directly between her vehicle and the pedestrian crosswalk. *Id.* Officer Kennedy repositioned himself to block her vehicle from passing, and Plaintiff stopped her vehicle again. *Id.* at p. 8.

3. Plaintiff asserts that when Officer Kennedy forced her vehicle to stop again, Officer Garcia approached Plaintiff again, towards the driver-side window, directing her to "get out of the vehicle." *Id.* Instead of complying with the directive, Plaintiff rolled down the driver-side window and "responded that there was no reason to get out of the vehicle." *Id.* Plaintiff claims that Officer Kennedy, who was still standing in front of her vehicle and between it and the crosswalk, began yelling at Plaintiff, threw his water bottle down and put his left hand on his service firearm. *Id.*

4. Plaintiff claims that Officer Garcia reached inside her open driver-side window and Officer Kennedy rapidly moved from in front of her vehicle and also approached her driver-side window. *Id.* Plaintiff claims that Officer Garcia's action startled her, and she released her foot from the break pedal and her car moved forward. *Id.* At that time, Plaintiff claims that "[s]uddenly and unexpectedly, Defendant Kennedy unholstered his service firearm, pointed it at Plaintiff either just outside or slightly inside her open driver-side window, and pulled the trigger, shooting Plaintiff at point-blank range."

---

[1] Plaintiff references several times in her complaint that her husband is an assistant football coach NISD and that she is known by staff at the football games but makes no assertion that either Officer Kennedy or Officer Garcia had any prior knowledge of or interaction with her before the incident on October 28, 2023. *See* ECF No. 9.

*Id.* at p. 9. Plaintiff claims that the bullet entered her upper right arm, fracturing her humerus and causing muscle and nerve damage. *Id.* Plaintiff asserts that both Officers Kennedy and Garcia remain employed by NISD and have not received discipline or further training or supervision. *Id.* at p. 10-11. Plaintiff asserts that Officer Kennedy was recently indicted for aggravated assault with a deadly weapon by a police officer, deadly conduct, and official oppression. *Id.* at p. 11.

5.      Plaintiff asserts that Officer Kennedy engaged in excessive use of force, that both Kennedy and Garcia unlawfully seized her, and Officer Garcia acquiesced in Officer Kennedy's alleged excessive use of force. *Id.* Plaintiff claims that NISD should not have hired Kennedy, failed to train/supervise/discipline Kennedy and/or Garcia, and ratified Kennedy and Garcia's actions by not firing or otherwise disciplining them after the incident. *Id.* at pp. 16-19.

### III. FRCP 12(b)(6) STANDARD

6.      In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to plaintiff. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). However, the plaintiff must do more than recite the formulaic elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). The plaintiff must plead specific facts, not mere conclusory allegations. *Tuchman v. DSC Comm'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). The court is not bound to accept "as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 678. Dismissal is appropriate if the complaint fails to plead "enough facts to state a clam to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

### IV. ARGUMENT

   **A. Officers Kennedy and Garcia retain their qualified immunity from Plaintiff's § 1983 claims.**

7.  Officers Kennedy and Garcia assert and maintain that they are entitled to the defense of qualified immunity. Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity cloaks a police officer from liability if a reasonably competent law enforcement agent would not have known that his actions violated clearly established law." *James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990). "A constitutional right must be implicated, and 'the contours of the right must be sufficiently clear that a reasonable official would understand that what [he is] doing violates that right.'" *Id.* (footnote omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Qualified immunity is a defense to an excessive use of force claim under the Fourth Amendment. *Brown,* 878 F.2d at 873–74. It is settled that the qualified immunity doctrine is immunity from suit rather than a mere defense to liability, which should be resolved at the earliest possible stage of litigation. *Hunter,* 502 U.S. at 227.

8.  In suits brought under federal law, government employees are presumptively entitled to the defense of qualified immunity and, once the defense is asserted, the burden shifts to the plaintiff to show that immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989). Accordingly, the Fifth Circuit requires that a plaintiff suing governmental officials in their individual capacities must meet heightened pleading requirements in cases, such as this one, in which an immunity defense can be raised. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995). In order to survive, claims against state actors in their individual capacities "must be pleaded with factual detail and particularity, not mere conclusory allegations." *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999).

9.  In assessing a claim of qualified immunity, a court engages in a two-step analysis. The Court must decide (1) whether facts alleged or shown by plaintiff make out a violation of a constitutional

right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 226 (2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201(2001)). Courts may "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand." *Pearson,* 555 U.S. at 226. Even if the plaintiff has alleged a constitutional violation, qualified immunity may still apply because "[e]ven if the official's conduct violated a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Id.* at 105 (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)). Applying these principles in the instant case, Kennedy and Garcia are entitled to qualified immunity.

10.     First, the alleged actions taken by Kennedy and Garcia and complained of by Plaintiff were discretionary. "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Tamez v. City of San Marcos,* 118 F.3d 1085, 1091-92 (5th Cir.1997). "Executive officials who must necessarily exercise discretion in the scope of their duties are granted qualified immunity from damage suits." *Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 939 (5th Cir. 1992). In a discretionary action, the government official acts not pursuant to specific orders, spelled out in detail beforehand, but engages in deliberation and the exercise of judgment. *Tamez,* 118 F.3d at 1092. Taking Plaintiff's well-pleaded facts as true, Kennedy and Garcia's interactions with her were discretionary, as they demonstrate that each officer was responding quickly to an evolving situation involving traffic direction, pedestrians, and Plaintiff's actions in driving her automobile.

11.     Next, for the reasons elucidated below, Plaintiff has failed to state a claim for violation of a constitutional right, whether asserted under the Fourth or Fourteenth Amendment, and Kennedy and Garcia are entitled to qualified immunity accordingly. *Pearson,* 555 U.S. at 226. Finally, "plaintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense." *Jackson v. City of Beaumont Police Dep't,* 958 F.2d 616,

620 (5th Cir. 1992). "Mere conclusory allegations and bold assertions are insufficient to meet this heightened standard." *Streetman v. Jordan,* 918 F.2d 555, 557 (5th Cir.1990).

### B. Plaintiff failed to state a claim against Defendant Kennedy for excessive force under the Fourth Amendment.

12. While Plaintiff recites the conclusory legal elements of her Fourth Amendment claim, asserting that Officer Kennedy's use of force was "clearly excessive" and "clearly unreasonable" because she "never made any threatening gestures" toward Kennedy or anyone else, "was not actively resisting" and "did not pose an immediate threat to the safety" of Kennedy or others, such conclusory allegations are belied by her own well-pleaded factual allegations. ECF No. 9 at p. 12. By Plaintiff's own account, the two police officers were conducting traffic and she was approaching a crosswalk that pedestrians were using to gain access to the stadium when she was instructed to stop and calm down, she responded by trying to drive around Officer Kennedy who was standing between her vehicle and the pedestrian crosswalk, she was told to stop again and to get out of the vehicle, she did not comply and allowed her vehicle to move forward again, towards Officer Kennedy and a pedestrian crosswalk when Officer Kennedy used force to stop her. *Id.* at pp. 7-8. Examples of facts relevant to a qualified immunity defense to an excessive force claim include "evidence that the officer harbored ill-will toward the citizen, whether a warrant was employed, whether the plaintiff resisted arrest or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of arrest, and on what charges plaintiff was arrested." *Jackson,* 958 F.2d at 620 (citation omitted).

13. Here, Plaintiff's Complaint includes "virtually no facts which would allow determining whether the officers' conduct was unreasonable." *Id.* at 621. Plaintiff failed to plead specific facts sufficient to overcome the officer's qualified immunity defense. While Plaintiff's claim for excessive force is governed by the Fourth Amendment's reasonableness standard, she has failed to allege facts

which state a claim upon which relief can be granted. To state a claim for excessive force, a plaintiff's complaint must allege: "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City,* 879 F.3d 613, 619 (5th Cir. 2018)(citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted). "The second and third elements collapse into a single objective-reasonableness inquiry…guided by the following *Graham* factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Pena,* 246 F.3d at 487 (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(internal citation omitted).

14.     Instead of well-pleaded factual allegations demonstrating a claim for relief that is plausible on its face, Plaintiff instead engaged in a threadbare recitation of some of the legal elements of her claim, asserting in conclusory fashion she did not threaten or pose any danger, and she was subjected to excessive force. ECF No. 9, PP. 9-10. Plaintiff's threadbare recitation of some of the legal elements of her claim, without factual support, are insufficient to state a claim. Moreover, her complaint is devoid of any facts showing that Officer Kennedy's actions were objectively unreasonable under the facts and circumstances and violated a clearly established right. *See Goodson v. City of Corpus Christi,* 202 F.3d 730, 740 (5th Cir.2000). Indeed, "[d]irecting traffic is dangerous: it requires officers to put their own safety at risk to protect the public from injury, or even death." *VIA Metropolitan Transit v. Garcia*, 397 S.W.3d 702, 714 (2012). Here, Plaintiff contradicted her own allegations when she pled that Officer Kennedy was conducting traffic at crosswalk pedestrians used to enter the stadium, Plaintiff attempted to drive "around" Officer Kennedy without instruction after he stood in front of her vehicle as she approached the crosswalk, and she removed her foot from the brake pedal after Officer Garcia instructed her to get out the vehicle. ECF No. 9, pp. 7-8. Plaintiff cannot ask this Court to ignore

these necessary factual underpinnings to her excessive force claim, especially where, as here, Officer Kennedy asserted his right to qualified immunity. *See Jackson v. City of Beaumont Police Dep't,* 958 F.2d 616, 620 (5th Cir. 1992)("We have consistently held that plaintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss.")

### C. Plaintiff failed to state a claim against Defendants Kennedy or Garcia for unreasonable search and seizure under the Fourth Amendment.

15.    The Fourth Amendment requires a traffic stop to be justified when it begins; any subsequent actions must be "reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A traffic stop is justified at its inception when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* Reasonable suspicion is a low threshold; it is not probable cause. *See United States v. Castillo*, 804 F.3d 361, 364, 367 (5th Cir. 2015). Certainly, then, if officers "have probable cause to believe that a traffic violation has occurred," then there is also reasonable suspicion to stop the vehicle. *United States v. Walker,* 49 F.4th 903, 906–07 (5th Cir. 2022)(citing Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

16.    Relevant here, a traffic violation occurs when a person willfully fails or refuses to comply with a lawful order or direction of a police officer while conducting traffic. Tex.Transp.Code §542.201. Plaintiff specifically pled that Officer Kennedy and Officer Garcia were conducting traffic control. ECF No. 9, p. 6. She pled that Officer Kennedy stepped in front of her vehicle, and she stopped. *Id.*

at p. 7. Officer Garcia then instructed Plaintiff to "calm down." *Id.* However, Plaintiff then attempted to move her vehicle "around" Officer Kennedy without further instruction from either officer. *Id.* When Officer Garcia instructed Plaintiff to get out her vehicle, Plaintiff's own facts show that she refused to comply. *Id.* The facts alleged by Plaintiff show that that stop was justified because Plaintiff failed to comply with the orders and direction of Officer Kennedy and Garcia while they were conducting traffic control at the stadium. Plaintiff's Fourth Amendment unreasonable search and seizure claim should therefore be dismissed.

### D. Plaintiff failed to state a claim against Defendant Garcia for bystander liability for excessive use of force under the Fourth Amendment.

17. "[A]n officer may be liable under § 1983 under [the] theory of bystander liability where the officer: '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). A plaintiff must plead (and ultimately prove) that the officer "knows that a fellow officer is violating an individual's constitutional rights," which logically requires that the officer observe the violation. *See McDonald v. McClelland,* 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam) (finding that plaintiff's bystander liability claim failed as a matter of law because "the uncontroverted evidence [was] that none of the defendant officers saw any other officer kick [the plaintiff]" and because "[b]ystander liability cannot attach if the officer did not know about and acquiesce in the constitutional violation." (citing *Whitley*, 726 F.3d at 647)). And, under FRCP 12(b)(6), dismissal is warranted when the plaintiff has offered nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (internal citations omitted).

18. Plaintiff has formulaically pled the elements of a failure to intervene claim, without any factual enhancements or operative facts to cross the threshold into plausibility. The totality of allegations supporting Plaintiff's failure to intervene claims are as follows:

Plaintiff herself asserts that Kennedy allegedly "immediately resorted to the use of deadly force, all while Plaintiff was in fear of the officers and attempting at all times to comply with their frantic orders." ECF No. 9, p. 1.

"Suddenly and unexpectedly, Defendant Kennedy unholstered his service firearm, pointed it at Plaintiff either just outside or slightly inside her open driver-side window, and pulled the trigger, shooting Plaintiff at point-blank range." *Id.* at p. 9.

19. However, an officer may only be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013). Fifth Circuit case law requires a plaintiff pursuing a § 1983 claim based on a theory of bystander liability to show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing the acting officer was violating a clearly established constitutional right. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (nine officers who observed two other officers tase and beat an unresisting arrestee were entitled to qualified immunity because the plaintiffs were unable to carry their "burden to demonstrate that the law was "clearly established"—that ... any reasonable officer would have known that the Constitution required them to intervene"). More than a mere presence is required in the vicinity of the violation. *See Id.* at 323. Plaintiff must show that "any reasonable officer would have known that the Constitution required them to intervene." " *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 301 (5th Cir. 2023).

20. Here, the facts fail to allege that it was patently obvious Officer Garcia violated a constitutional duty to intervene because Plaintiff fails to plead facts showing Officer Garcia had a reasonable opportunity to prevent harm. Plaintiff fails to plead any facts showing that Officer Garcia realized the excessive nature of the alleged force and had a realistic opportunity to intervene. She further failed to allege facts indicating that Officer Garcia had foreknowledge of Officer Kennedy's actions. Instead,

Plaintiff alleged that Officer Kennedy "suddenly and unexpectedly" unholstered his firearm, and "immediately" resorted to the use of deadly force. ECF No. 9, p. 1; p. 9. *See Gilbert v. French*, No. CIV.A. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008), aff'd, 364 F. App'x 76 (5th Cir. 2010)(dismissing failure to intervene claim where the facts alleged indicated there was insufficient time for officers to appreciate and react to a possible use of excessive force). Officer Garcia therefore retains his qualified immunity and Plaintiff's bystander liability claim should be dismissed.

### E. Plaintiff failed to state a claim against Defendant NISD for failure to train, supervise or discipline Defendants Kennedy and Garcia.

21. Plaintiff similarly failed to demonstrate municipal liability under a failure to train/supervise theory of liability. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "A policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427 (1985) (plurality opinion)(internal citations and alterations omitted).

22. An inadequate training program, *after* it is shown to be an official policy or custom of which the policymaking body has knowledge, may only support a § 1983 claim where: (1) the entity's training policy was inadequate, (2) it was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the constitutional violation.[2] *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014); *Malone v. City of Fort Worth, Texas,* 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018).

---

[2] "Like the standards applicable to a failure to train, to hold a local government liable for failure to supervise [or discipline] a plaintiff must show '(1) the municipality's supervision was inadequate, (2) the municipality's policymaker was deliberately indifferent in supervising the subordinates, and (3) the inadequate supervision directly caused the plaintiff's injury.'" *Malone,* 297 F. Supp. 3d at 662 (*Clyce v. Hunt Cty.*, 515 Fed.Appx. 319, 323 (5th Cir. 2013))(citations omitted).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 536 U.S. at 61 (quoting *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). The Supreme Court has made clear that "[a] less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* at 61-62 (internal citations and alterations omitted).

23. Here, while Plaintiff asserts in conclusory fashion that NISD failed to train and supervise its officers, such an assertion can only serve as a basis for municipal liability under § 1983 in limited circumstances. *See City of Canton*, 489 U.S. at 389; *City of Houston v. Piotrowski*, 237 F.3d 567, 578-79 (5th Cir. 2001). "[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011). Showing deliberate indifference under a failure to train or supervise theory requires "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 1360. The pattern of constitutional violations "must be 'fairly similar to what ultimately transpired.'" *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Plaintiff has at most alleged that she was injured by a single officer on a single occasion, which is insufficient to support a failure to train theory of liability. *See Henderson v. Killeen Indep. Sch. Dist.,* A-13-CA-471-LY, 2013 WL 6628630, at 4 (W.D. Tex. Dec. 16, 2013)(finding that a student plaintiff had failed to state a claim under a failure to train theory where she alleged only two incidents of excessive use of force and her allegations did not fall into the extremely narrow category of claims not requiring a pre-existing pattern of violations).

24. Moreover, "[m]ere negligence or even gross negligence is not enough . . . for [NISD] to be liable for the Board's failure to train or supervise the school staff, the Board must have actual or constructive notice of ongoing constitutional violations at the school; otherwise the Board's failure could not be a conscious or deliberate choice." *Yara v. Perryton Indep. Sch. Dist.,* 560 Fed. App'x 356,

359 (5th Cir. 2014). Plaintiff, however, failed to plead facts plausibly suggesting a pattern of similar constitutional violations by untrained officers, much less actual or constructive knowledge of those similar constitutional violations on behalf of NISD's Board of Trustees. Whether analyzed under traditional *Monell* municipal liability or a failure to train/supervise theory, Plaintiff's well-pleaded facts show that there is no basis for liability against NISD.

### F. Plaintiff failed to state a claim against Defendant NISD for hiring/re-hiring/screening Defendant Kennedy.

25. Plaintiff's hiring/retention claim similarly fails because she has not pleaded any facts that plausibly demonstrate deliberate indifference in regards to hiring or retaining Officer Kennedy prior to her alleged injury. "Deliberate indifference to the 'known or obvious consequences' of a hiring decision can amount to a constitutional violation." *Rivera v. Bonner,* 691 Fed. Appx. 234, 237 (5th Cir. 2017)(citing *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382 (1997)). When a plaintiff alleges a claim for inadequate consideration of an applicant's background, "'deliberate indifference' exists where adequate scrutiny ... would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *Rivera,* 691 Fed. Appx. at 237 (citing *Gros,* 209 F.3d at 433-34); *accord Brown*, 520 U.S. at 411, 117 S.Ct. 1382. The Supreme Court has cautioned that "predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Brown*, 520 U.S. at 410, 117 S.Ct. 1382. "Accordingly, a plaintiff must show that there was a strong connection between the background of the particular applicant and the specific violation alleged' such that 'the hired officer was highly likely to inflict the particular type of injury suffered.'" *Rivera,* 691 Fed. Appx. at 238 (citing *Gros*, 209 F.3d at 434). "A showing of simple or even heightened

negligence will not suffice." *Rivera,* 691 Fed. Appx. at 238 (citing *Brown*, 520 U.S. at 407, 117 S.Ct. 1382).

26. In *Brown*, the Supreme Court held that a sheriff was not deliberately indifferent in hiring a police officer with a criminal record. *Brown,* 520 U.S. at 415–16. The officer allegedly used excessive force in an arrest, and an arrestee brought a Section 1983 claim alleging that the sheriff had failed to adequately review his background before hiring him. *Id.* at 399-401. The officer's criminal history included pleading guilty to several misdemeanors—assault and battery, resisting arrest, and public drunkenness—occurring during a fight when the officer was in college. *Id.* at 413. Despite obtaining the criminal history report during the hiring process, the sheriff "did not inquire into the underlying conduct or the disposition of any of the misdemeanor charges." *Id.* at 401, 411, 117 S.Ct. 1382. Although the Supreme Court noted that the sheriff's assessment could be considered inadequate, the officer's use of excessive force was not "a plainly obvious consequence of the hiring decision, " and thus the "link between the officer's prior convictions and his use of excessive force was too tenuous to show that the sheriff had disregarded a known or obvious risk of injury." *Rivera,* 691 Fed. Appx. at 238 (citing *Brown,* 520 U.S. at 412, 415).

27. In this case, Plaintiff has not alleged any facts that can meet the high burden of showing deliberate indifference. Instead, she alleges in conclusory fashion that the District knew or should have known that Officer Kennedy was unfit to hire and retain due to "numerous criticisms" and resignation from his former employment at Live Oak PD. ECF No. 9 at p. 17. However, these broad allegations are insufficient to show to deliberate indifference on NISD's part. Plaintiff failed to plead specific facts showing that Officer Kennedy's background indicated he was likely to inflict the particular type of injury alleged here. *See Gros*, 209 F.3d at 434. In identifying the constitutional theory predicated on hiring decisions, the Supreme Court acted cautiously and narrowly, because "predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is

far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Brown*, 520 U.S. at 410, 117 S.Ct. 1382. Deliberate indifference is a high standard, and Plaintiff failed to show that the information available to the District at the time of hire evidenced a strong connection between Officer Kennedy's background and the specific violations at issue in this case. As a result, Plaintiff's hiring/re-hiring/screening claim against NISD should be dismissed.

### G. Plaintiff failed to state a claim against Defendant NISD for ratification.

28. Plaintiff claims that because Officers Kennedy and Garcia are still employed, have not been disciplined, or received further training or supervision, NISD has ratified their conduct. ECF No. 9 at p. 11. When an authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the governmental entity. However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 860 (5th Cir. 2009) quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (Additionally, the Fifth Circuit has "explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipal." *Id.* "Such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance." *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004).

29. Here, this case does not present an "extreme factual situation" where ratification can be charged to NISD. *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant), *with Snyder*, 142 F.3d at 798 (refusing to find ratification in case in which officer shot fleeing suspect in the back). In *Grandstaff*, the entire night shift of the City of Borger's police force converged on the ranch of an innocent third party while in pursuit of a fleeing suspect. *See Grandstaff*, 767 F.2d at 165, 171. The foreman in charge of the northern section of the ranch awoke to the sound of the chase and a police

bullet that struck the ranch house. *Id.* at 165. As he drove his pickup truck across the property to assist the officers, the officers opened fire on him from two sides, which the Fifth Circuit described as a "wild barrage"; he died before he could be transported to a hospital. *Id.* at 165, 171. The Fifth Circuit noted that the City took no disciplinary action after "this incompetent and catastrophic performance," and "concerned [itself] only with unworthy, if not despicable, means to avoid legal liability." *Id.* at 166, 171.

30. Here, the facts alleged by Plaintiff failed to establish any "recklessness" on behalf of NISD. *See* Synder, *Snyder*, 142 F.3d at 798. Instead, the facts show that Plaintiff approached a crosswalk in her vehicle and failed to comply with the lawful directives of officers. The Fifth Circuit has further held that the failure to discipline or retrain officers after alleged misconduct is not a basis for ratification liability. *See Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024). Therefore, Plaintiff's ratification claim should be dismissed.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully move the Court to grant their 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, dismiss Plaintiff's claims in their entirety, and furthermore grant them any and all relief to which they are justly entitled.

Respectfully submitted,

By: /s/ *Katie E. Payne*
Katie E. Payne
State Bar No. 24071347
E-Mail: kpayne@wabsa.com
D. Craig Wood
State Bar No. 21888700
E-Mail: cwood@wabsa.com

**WALSH GALLEGOS KYLE ROBINSON & ROALSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209

Telephone: (210) 979-6633  
Facsimile: (210) 979-7024

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 27th day of December 2024, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused the filing to be served upon all counsel of record.

<u>/s/ Katie E. Payne</u>  
Katie E. Payne