IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARKAY GARCIA, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 5-24-CV-01099-JKP-RBF |
| | § | JURY DEMANDED |
| NORTHSIDE INDEPENDENT SCHOOL | § | |
| DISTRICT, KYLE KENNEDY, and | § | |
| JOSEPH GARCIA, | § | |
| Defendants. | § | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

---

Fidel Rodriguez, Jr.
State Bar No. 17145500
fidel@fidrodlaw.com
Fidel Rodriguez, III
State Bar No. 24081924
tres@fidrolaw.com
RODRIGUEZ TRIAL LAW
231 W. Cypress St.
San Antonio, Texas 78212
(210) 777-5555 – Office
(210) 224-0533 – Facsimile

Sylvan S. Lang, Sr.
State Bar No. 11898700
sylvan@langfirm.com
Brian M. Dennis
State Bar No. 24039970
brian@langfirm.com
Meagan M. Gillette
State Bar No. 24050659
meagan@langfirm.com
LANG LAW FIRM, P.C.
Northwest Atrium
11550 IH-10 West, Ste. 273
San Antonio, Texas 78230
(210) 783-0322 – Office
(210) 479-0099 – Facsimile

Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
Shelby J. White
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 – Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................................... iii

I.   Introduction ........................................................................................................... 1

II.  Argument & Authorities ...................................................................................... 2

     A.  Standard applicable to Defendants' motion. .............................................. 2

     B.  Plaintiff adequately pled claims against Officers Kennedy and Garcia. ................ 3

          1.  Plaintiff adequately pled a claim for excessive force against Kennedy. ........... 3

          2.  Plaintiff adequately pled a claim for unreasonable search and seizure
              against Kennedy and Garcia. ........................................................ 7

          3.  Plaintiff adequately pled a claim for bystander liability against Garcia. ........ 11

     C.  Plaintiff adequately pled claims against NISD. .................................... 12

          1.  Pleading standard applicable to municipal liability claims. ................... 12

          2.  Plaintiff identified the customs, practices and policies at issue. .............. 14

          3.  Plaintiff sufficiently alleges that NISD's policies, customs, and practices
              were the "moving force" behind the constitutional violations at issue. ....... 14

              (a)  NISD's failure to train its officers on use of force. ................... 15

              (b)  NISD's failure to supervise and discipline its officers. ............... 17

              (c)  NISD's hiring of Kennedy. ................................................ 18

     D.  Finally, and alternatively, if this Court finds Plaintiff's claims deficient in
         any respect, Plaintiff seeks leave to amend her First Amended Complaint. ......... 19

III. Prayer ................................................................................................................. 20

CERTIFICATE OF SERVICE ...................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Aguirre v. City of San Antonio,*
   995 F.3d 395 (5th Cir. 2021) ............................................................................... 6

*Alexander v. Verizon Wireless Servs., L.L.C.,*
   875 F.3d 243 (5th Cir. 2017) ............................................................................... 2

*Alvarez v. City of Brownsville,*
   904 F.3d 382 (5th Cir. 2018) ........................................................................ 12, 15

*Ambler v. Nissen,*
   116 F.4th 351 (5th Cir. 2024) ............................................................................. 4

*Anderson v. Johnson,*
   555 U.S. 323 (2009) ........................................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................ 2, 3, 12, 14

*Balle v. Nueces Cty., Tex.,*
   690 F. App'x 847 (5th Cir. 2017) ...................................................................... 18

*Bd. of Cty. Comm'rs v. Brown,*
   520 U.S. 397 (1997) ..................................................................................... 15, 18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S 550 (2007) ............................................................................................ 14

*Brendlin v. California,*
   551 U.S. 249 (2007) ............................................................................................. 7

*Brown v. City of Hous.,*
   297 F. Supp. 3d 748 (S.D. Tex. 2017) ...................................................... 12, 13, 16

*Burnett v. Bottoms,*
   368 F. Supp. 2d 1033 (D. Az. 2005) .................................................................. 11

*Carroll v. Ellington,*
   800 F.3d 154 (5th Cir. 2015) ............................................................................... 8

*City of Canton v. Harris,*
   489 U.S. 378 (1989) ..................................................................................... 15, 16

## TABLE OF AUTHORITIES (cont'd)

**CASES**                                                                                                           **PAGE(S)**

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988) .................................................................................................. 17

*Conde v. State,*
    135 S.W.3d 252 (Tex. App.—Waco 2004, no pet.) ................................................. 8

*Connick v. Thompson,*
    563 U.S. 51, (2011) ................................................................................................. 15

*Crane v. City of Arlington, Tex.,*
    50 F.4th 453 (5th Cir. 2022) ............................................................................... 4, 6

*Flanagan v. City of Dall.*, Tex.,
    48 F. Supp. 3d 941 (N.D. Tex. 2014) ................................................................... 13

*Flanagan v. City of Dall., Tex.,*
    48 F. Supp. 2d 16 (N.D. Tex. 2014) ..................................................................... 16

*Foman v. Davis,*
    371 U.S. 178 (1962) ............................................................................................... 19

*Freeman v. Gore*,
    483 F.3d 404 (5th Cir. 2007) ................................................................................. 3

*Graham v. Connor*,
    490 U.S. 386 (1989) ................................................................................................. 4

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter,*
    313 F.3d 305 (5th Cir. 2002) ................................................................................. 3

*Groden v. City of Dallas,*
    826 F.3d 280 (5th Cir. 2016) ......................................................................... 13, 18

*Harmon v. City of Arlington,*
    16 F.4th 1159 (5th Cir. 2021) ............................................................................... 4

*Joseph on behalf of Estate of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) ............................................................................... 11

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ............................................................................... 2

*Lormand v. U.S. Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009) ............................................................................... 2

## TABLE OF AUTHORITIES (cont'd)

CASES                                                                      PAGE(S)

*Lytle v. Bexar Cnty., Tex.,*
    560 F.3d 404 (5th Cir. 2009) ................................................................. 6

*Mann v. Adams Realty Co.,*
    556 F.2d 288 (5th Cir. 1977) ................................................................. 2

*Milam v. City of San Antonio,*
    113 F. App'x 622 (5th Cir. 2004) ......................................................... 17

*Monell v. New York City Dept. of Soc. Servs.,*
    436 U.S. 658 (1978) ............................................................................ 12

*Morgan v. Hubert,*
    335 F. App'x 466 (5th Cir. 2009) ........................................................... 3

*Pena v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ............................................................... 15

*Pennsylvania v. Mimms,*
    434 U.S. 106 (1977) ............................................................................ 10

*Peterson v. City of Fort Worth, Tex.,*
    588 F.3d 838 (5th Cir. 2009) ............................................................... 15

*Piotrowski v. City of Hous.,*
    237 F.3d 567 (5th Cir. 2001) ............................................................... 12

*Ramirez v. Knoulton,*
    542 F.3d 124 (5th Cir. 2008) ................................................................. 3

*Ratliff v. Aransas Cty., Tex.,*
    948 F.3d 281 (5th Cir. 2020) ............................................................... 12

*Sanchez v. Gomez,*
    283 F. Supp. 3d 524 (W.D. Tex. 2017) .......................................... 12, 16

*Schaefer v. Whitted,*
    121 F. Supp. 3d 701 (W.D. Tex. 2015) ............................................... 12

*Sonnier v. State Farm Mut. Auto. Ins. Co.,*
    509 F.3d 673 (5th Cir. 2007) ................................................................. 3

*Tennessee v. Garner,*
    471 U.S. 1 (1985) .............................................................................. 4, 6

## TABLE OF AUTHORITIES (cont'd)

CASES                                                                                    PAGE(S)

*Terry v. Ohio,*
   392 U.S. 1 (1968) ..................................................................................... 7

*Test Masters Educ. Servs., Inc. v. Singh,*
   428 F.3d 559 (5th Cir. 2005) ................................................................... 2

*Thomas v. City of Galveston, Tex.,*
   800 F. Supp. 2d 826 (S.D. Tex. 2011) ................................................... 12

*Tolan v. Cotton,*
   572 U.S. 650 (2014) ............................................................................... 6

*Turner v. Pleasant,*
   663 F.3d 770 (5th Cir. 2011) ................................................................... 2

*U.S. ex rel. Hebert v. Dizney,*
   295 F. App'x 717 (5th Cir. 2008) ......................................................... 20

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.,*
   336 F.3d 375 (5th Cir. 2003) ................................................................. 19

*U.S. v. Arvizu,*
   534 U.S. 266 (2002) ............................................................................... 8

*U.S. v. Lopez-Moreno,*
   420 F.3d 420 (5th Cir. 2005) ............................................................. 7, 8

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.,*
   355 F.3d 370 (5th Cir. 2004) ................................................................. 3

*United States v. Cortez,*
   449 U.S. 411 (1981) ............................................................................... 7

*United States v. Hill,*
   752 F.3d 1029 (5th Cir. 2014) ............................................................... 7

*United States v. Mendenhall,*
   446 U.S. 544 (1980) ............................................................................... 7

*United States v. Michelletti,*
   13 F.3d 838 (5th Cir. 1994) ................................................................... 7

*Via Metropolitan Transit v. Garcia,*
   397 S.W.3d 702 (Tex. 2012) ............................................................. 5, 18

## TABLE OF AUTHORITIES (cont'd)

**CASES**                                                                                              **PAGE(S)**

*Westfall v. Luna,*
   903 F.3d 534 (5th Cir. 2018) ................................................................... 15

*Whren v. U.S.,*
   517 U.S. 806 (1996) ................................................................................. 8

*World Wide St. Preachers Fellowship v. Town of Columbia,*
   591 F.3d 747 (5th Cir. 2009) ................................................................... 17

*Wright v. Denison Indep. Sch. Dist.,*
   No. 4:16-CV-615, 2017 WL 2262778 (E.D. Tex. May 24, 2017) ......................................... 13

**RULES**

Fed. R. Civ. P. 15(a) .................................................................................. 19

**STATUTES**

Tex. Transp. Code § 542.201 ........................................................................... 9

Tex. Transp. Code § 542.501 ........................................................................... 9

TO THE HONORABLE UNITED STATES DISTRICT JUDGE JASON K. PULLIAM:

Plaintiff, Markay Garcia, files this Response to Defendants Northside Independent School District (NISD), Kyle Kennedy, and Joseph Garcia's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim upon Which Relief Can be Granted. (Dkt. 16).

## I.    Introduction

This is a civil rights case arising from an improper and warrantless search and seizure of Plaintiff by Defendants Kennedy and Garcia on October 28, 2023, that ended in the use of excessive, deadly force by Defendant Kennedy when he, without any warning, pulled his firearm on Plaintiff while she was in her vehicle and shot her through the right arm, resulting in serious damage to Plaintiff, but which—thankfully—did not result in her, or anyone else's, death. For his role in this incident, Mr. Kennedy was indicted by a Bexar County grand jury for (1) aggravated assault with a deadly weapon by a police officer, (2) deadly conduct, and (3) official oppression, and has since been arrested and released on bond.

Plaintiff sued the officers individually and also sued their employer, NISD, whose hiring of Kennedy, despite a poor employment history, and then failure to train and supervise Kennedy and Garcia, made this incident not only possible but likely. After the event, NISD ratified Kennedy and Garcia's conduct when it failed to discipline either officer for their role in the incident. NISD has still failed to discipline Kennedy, even in the face of a criminal indictment.

Despite clear and detailed factual allegations of liability against each Defendant, collectively all three move for dismissal claiming that Plaintiff has failed to state a valid claim against any of them. (Dkt. 16). Despite shooting Plaintiff through the arm when there was no immediate threat of harm to either officer or anyone else, Kennedy claims Plaintiff fails to state a claim of excessive force against him. (Dkt. 16 at 6-8). Despite having no warrant and, otherwise,

no basis in law or fact to stop and detain Plaintiff as she was driving into the Northside stadium to see her husband's high school football team play, Kennedy and Garcia argue that Plaintiff fails to state a claim against her for an unreasonable search and seizure. (Dkt. 16 at 8-9). And despite pleading that Garcia failed to intervene in Kennedy's unreasonable seizure and then use of deadly force, Garcia argues that Plaintiff fails to state a claim for bystander liability. (Dkt. 16 at 9-11). Finally, NISD argues that Plaintiff failed to state a claim against it for training, supervision, discipline, hiring, or ratification. (Dkt. 16 at 11-16). In the process, Defendants mischaracterize the pleadings and attempt to impose requirements on Plaintiff's *Monell* allegations that do not exist. Defendants seek to avoid answering for this horrific, and wholly avoidable incident. This Court should deny Defendants' motion and allow the claims against all Defendants to move forward.

## II.    Argument & Authorities

### A.    Standard applicable to Defendants' motion.

The pleading stage is not the point at which Plaintiff must establish the level of proof necessary to ultimately prevail. *See Mann v. Adams Realty Co*., 556 F.2d 288, 293 (5th Cir. 1977). Indeed, a "strong framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, in the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 231 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). And, in the motion to dismiss context, Plaintiff's allegations must be taken as true. *See e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 696 (2009); *Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 249 (5th Cir. 2017).

The ultimate question in considering a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). Two primary principles guide the plausibility analysis. *Iqbal*, 556 U.S. at 678–79. First, the court must "liberally construe the complaint in favor of the plaintiff[.]" *Id.*  Second, the court must "accept all well-pleaded factual allegations as true." *Id.*; *see also Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007). Courts do not evaluate the merits of the allegation but only consider whether plaintiffs have adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Thus, a pleading simply needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation omitted).

## B. Plaintiff adequately pled claims against Officers Kennedy and Garcia.

### 1. Plaintiff adequately pled a claim for excessive force against Kennedy.

To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  Plaintiff was shot and severely injured as a result of the Defendant Kennedy's use of deadly force—element one is clear from the First Amended Complaint.  Defendants do not dispute this element.

The constitutional analysis therefore thus turns on whether Defendant Kennedy's use of force was "excessive" and objectively "unreasonable." *Gore*, 483 F.3d at 416; *see Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (holding that because there was no dispute that the plaintiff suffered an injury, "[t]he relevant question . . . [was] whether the force was 'clearly excessive' or 'clearly unreasonable'").  Generally speaking, courts "must balance the amount of

force used against the need for force" considering "the totality of the circumstances" from the "perspective of a reasonable officer on the scene" and the well-established *Graham v. Connor*[1] factors. *Ambler v. Nissen,* 116 F.4th 351, 357 (5th Cir. 2024) (en banc).

The *Graham* factors include the severity of the crime at issue, whether the suspect poses a threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest. *Graham,* 490 U.S. at 396. In deadly force cases, however, "the threat-of-harm typically predominates the analysis…" *Harmon v. City of Arlington,* 16 F.4th 1159, 1163 (5th Cir. 2021). In considering the immediacy of the threat, the Court can consider "the speed with which an officer resorts to force where officers deliberately, and rapidly, eschews lesser responses when such means are plainly available and obviously recommended by the situation." *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 464 (5th Cir. 2022). After all, it is always unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner,* 471 U.S. 1, 11 (1985).

Plaintiff's First Amended Complaint adequately pleads a constitutional violation against Defendant Kennedy. Simply, Kennedy used deadly force when there was no threat of harm to himself or anyone else. (Dkt. 9 at 8-10, ¶¶ 23-26). In an effort to avoid Plaintiff's clear and detailed allegations, Defendants seem to argue that there was a threat of harm to Kennedy or some unknown people in the crosswalk when he decided to draw his firearm and shoot Plaintiff. (Dkt. 16 at 6-7, ¶¶ 12, 14). But, as the First Amended Complaint makes clear, there was never any threat to Kennedy or anyone else. Rather, it was Kennedy who created the danger and became the threat to Plaintiff and others.

---

[1] *Graham v. Connor*, 490 U.S. 386 (1989)

Kennedy focuses on the fact that Plaintiff, after receiving no further instructions from the officers and seeing no one in the crosswalk, started to drive forward, around Kennedy. *Compare* Dkt. 16 at 7, ¶ 14 *with* Dkt. 9 at 7, ¶ 19. But, Defendants omit that when Plaintiff did so, Kennedy repositioned himself to block her vehicle again, at which point she stopped. (Dkt. 9 at 8, ¶ 19). Moreover, the car did not begin to move again until Kennedy had moved to the side of the vehicle to approach Plaintiff from the driver-side. (*Id.* at ¶¶ 22-23). Practically speaking, it was only when Kennedy was out of the way of the vehicle, and to the side of the vehicle, out of its path, that he could reach in the car and shoot Plaintiff.

It is true, as Defendants note, that directing traffic can be dangerous. (Dkt. 16 at 7, ¶14) (citing *Via Metropolitan Transit v. Garcia,* 397 S.W.3d 702, 707 (Tex. 2012)). But, Defendants should have quoted the entire sentence from *Garcia,* which addressed the duty a police officer owes *to the public* and made clear that a police officer's role in regulating traffic "requires officers to put their own safety at risk to protect the public from accident, injury, or even death." *Garcia,* 397 S.W.3d at 707. Defendant Kennedy did just the opposite here—he endangered the public through his conduct and risked serious injury to the public he is charged to protect, and severely injured the public when he shot Plaintiff.

Plaintiff's complaint made it clear that when Kennedy fired his weapon, Plaintiff posed no risk of harm to him or anyone else. "Plaintiff did not have any weapons in the vehicle, was not a suspect of any crime, and did not pose any immediate threat to herself, the Officers, or others." (Dkt. 9 at 9-10, ¶ 25). Moreover, Defendant Kennedy knew this before he shot Plaintiff. (*Id.* at 10, ¶ 26). Because Plaintiff was not suspected of a crime, posed no threat, and was not actively resisting any effort to arrest her, Plaintiff's complaint clearly asserts a constitutional violation against Defendant Kennedy for excessive, deadly force.

The second prong assesses whether the constitutional right Kennedy violated was "clearly established" at the time of the violation. *Tolan v. Cotton,* 572 U.S. 650, 656 (2014). Whether a right is clearly established entails assessing whether the state of the law at the time of the incident provided the officer "fair warning" that his conduct was unconstitutional. *Id.*

The constitutional right underlying this case—*i.e.*, the Fourth Amendment right to be free from excessive force—has been clearly established for at least a decade. It is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established. *Aguirre v. City of San Antonio,* 995 F.3d 395, 415 (5th Cir. 2021). The central concept is that of "fair warning"—the law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions give reasonable warning that the conduct then at issue violated constitutional rights. *Id.* In *Garner,* the Supreme Court made it clear that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify using deadly force to do so." *Garner,* 471 U.S. at 11. "It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Crane*, 50 F.4th at 466 (quoting *Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 417 (5th Cir. 2009)). Tellingly, Defendants do not question whether Plaintiff's complaint adequately addresses the clearly established law prong.

Plaintiff therefore alleged a sufficient claim of excessive force that, if true, would also negate Defendant Kennedy's qualified immunity defense.

2.    **Plaintiff adequately pled a claim for unreasonable search and seizure against Kennedy and Garcia.**

The Fourth Amendment applies when a person is seized, such as during warrantless arrests or brief investigative stops. *See United States v. Cortez* 449 U.S. 411, 417 (1981). A Fourth Amendment seizure occurs when law enforcement officers create a show of authority to which a person submits. *See United States v. Mendenhall,* 446 U.S. 544, 553-54 (1980). Traffic stops are deemed seizures for purposes of the Fourth Amendment. *U.S. v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005); *see also Brendlin v. California,* 551 U.S. 249, 255 (2007).

Warrantless searches and seizures are presumptively unreasonable, subject to certain exceptions. *United States v. Hill,* 752 F.3d 1029, 1033 (5th Cir. 2014). One exception provides that "officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have reasonable suspicion that criminal activity is afoot." *United States v. Michelletti,* 13 F.3d 838, 840 (5th Cir. 1994) (en banc). As Defendants' motion acknowledges, "reasonable suspicion exists when the officers can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." (Dkt. at 8) (quoting *Lopez-Moreno,* 420 F.3d at 430).

The legality of any traffic stop is to be examined under the two-part *Terry v. Ohio*[2] reasonable suspicion inquiry, which requires that the officer's action be: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place. *Lopez-Moreno,* 420 F.3d at 430. And, for a stop to be justified "at its inception," the officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. *Id.* An officer's

---

[2] *Terry v. Ohio,* 392 U.S. 1 (1968).

"mere hunch" is not sufficient.  *Id.*  The Court is to examine the "totality of the circumstances" to see whether the officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* (quoting *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002)). Importantly, because it is clearly established that a seizure must be justified at its inception, courts consider only the information available to the officer at the time of the decision to stop the person.  *Carroll v. Ellington,* 800 F.3d 154, 171 (5th Cir. 2015).

The second part of the test concerns whether the detention was temporary and lasted no longer than necessary to effectuate the purpose of the stop.  *Lopez-Moreno,* 420 F.3d at 430.  In the course of the stop, the officer may examine the driver's license and registration and run a check to determine whether the driver has any outstanding warrants or if the vehicle is stolen.  *Id.*  The officer may also ask the driver about the purpose and itinerary of the trip, and other questions can even be unrelated to the purpose of the traffic stop.  *Id.* at 430-31.  And if additional reasonable suspicion arises during the course of the stop and before the initial purpose of the stop has been fulfilled, the detention may continue until the new reasonable suspicion has been dispelled or confirmed.  *Id.* at 431. But once there is no more reasonable suspicion, any continued questioning unconstitutionally prolongs the detention.  *Id.*

A traffic stop is justified at its inception if the officer has probable cause to believe that a traffic violation has occurred.  *Whren v. U.S.,* 517 U.S. 806, 810 (1996).  For example, when a traffic violation is committed within the officer's view, the officer may lawfully stop and detain a person for the traffic violation.  *See Conde v. State,* 135 S.W.3d 252, 254-55 (Tex. App.—Waco 2004, no pet.). Plaintiff's First Amended Complaint makes clear that there was no justification for stopping her in the first place because she had done nothing wrong.  As Plaintiff alleges, "[t]here were no pedestrians in the crosswalk or waiting to cross the crosswalk and [there was] no other

reason for Defendant KENNEDY to step in front of her vehicle." (Dkt. 9 at 7, ¶ 16). Moreover, Plaintiff alleges she "did not commit a crime, was not suspected of a crime, nor had she done anything else that warranted the detention by Defendant[s] KENNEDY and GARCIA when she was unlawfully seized and not allowed to leave." (*Id.* at 14, ¶ 38). In light of Plaintiff's allegations, which must be taken as true, there was no basis to stop Plaintiff in the first place, rendering the stop unjustified from its inception and therefore unreasonable and unlawful under the Fourth Amendment.

Defendants admit as much in their motion. They do not point to anything within or outside of Plaintiff's First Amended Complaint that would justify their stop of Plaintiff. Rather, in their motion they claim that their stop of Plaintiff was justified because Plaintiff willfully failed or refused to comply with a lawful order or direction of a police officer, in violation of Texas Transportation Code § 542.501.[3] (Dkt. 16 at 8). This argument is misplaced for a couple of reasons.

First, Plaintiff was never given any order that justified the stop or, if she was, she fully complied. Plaintiff alleges that as she "began to drive her vehicle forward like the other cars before her had done … Defendant KENNEDY suddenly positioned himself directly in front of Plaintiff's vehicle, causing Plaintiff to stop her vehicle." (Dkt. 9 at 7, ¶ 16). When she stopped, Defendant Garcia "moved towards the passenger side of Plaintiff's vehicle and started knocking on the front passenger-side window, yelling at Plaintiff to 'calm down'" to which Plaintiff "rolled down her passenger-side window and responded that she was calm and just wanted to watch her husband's

---

[3] Defendants actually cite to § 542.201 of the Transportation Code which simply provides, in part, that "[a] local authority may not enact an ordinance or rule that conflicts with this subtitle unless expressly authorized by this subtitle." Given the context, however, Plaintiff believes Defendants meant to cite to § 542.501, titled "Obedience Required to Police Officers, School Crossing Guards, and Escort Flaggers".

football game." (*Id.* at ¶ 17). Between the two officers, no orders were ever given, but assuming the officers wanted Plaintiff to stop her vehicle, she fully complied.

The seizure here was thus never justified at its inception. To the extent that Defendant Kennedy's act of stepping in front of Plaintiff constitutes some unspoken order to stop, Plaintiff complied. Once she did, Plaintiff was given no further orders and should have been allowed to proceed. There was no basis to detain her any longer.

Next, Defendants seem to argue that Plaintiff also failed to comply with an order to get out of the vehicle. (Dkt. 16 at 9). Again, however, Defendants' argument ignores Plaintiff's First Amended Complaint.

Plaintiff asserts that when she saw no reason to be stopped and *received no further instructions from the officers*, she began to move her car forward again. (Dkt. 9 at 7-8, ¶ 19). Defendant Kennedy forced Plaintiff to stop again, at which point Defendant Garcia approached Plaintiff from the driver-side window and yelled at her to "get out of the vehicle." (*Id.* at 9, ¶ 20). Again, nothing justified this second stop and, as such, nothing justified any order to the Plaintiff to get out of her car. *See Anderson v. Johnson,* 555 U.S. 323, 331 (2009) ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.") (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n.6 (1977)).

Finally, there is no indication that when Garcia yelled at Plaintiff to get out of the vehicle, she even had time to comply before Kennedy drew his weapon and shot her. When Plaintiff rolled down her window to respond to Defendant Garcia, both Kennedy and Garcia began yelling at her, Garcia immediately reached inside the vehicle, and then Kennedy stepped up and shot Plaintiff. (Dkt. 9 at 8-9, ¶¶ 20-23). Thus, there is no indication or inference to be made from Plaintiff's First

Amended Complaint that Plaintiff had time to comply with the command. *See Burnett v. Bottoms,* 368 F. Supp. 2d 1033, 1040 (D. Az. 2005) (noting that if officer ordered plaintiff arrested immediately after telling her not to cross the street without giving her time to comply with the order, there would be no probable cause to arrest).

### 3.    Plaintiff adequately pled a claim for bystander liability against Garcia.

In criticizing Plaintiff's bystander claim against him, Defendant Garcia focuses on his ability to prevent Defendant Kennedy's use of excessive force. But that is not the only constitutional violation Defendant Garcia failed to prevent. Defendant Garcia was also present for, and in a position to intervene to stop Defendant Kennedy's unreasonable seizure of Plaintiff.[4]

Defendant Garcia would have, or should have, known that Defendant Kennedy's decision to seize Plaintiff was not supported by probable cause or even reasonable suspicion. As Defendants point out, "[a]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." (Dkt. 16 at 10, ¶ 19) (quoting *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020)). Here, Defendant Kennedy was the one that actually stopped Plaintiff. But, Defendant Garcia was not only present, but knew that there was no reason to stop her. (Dkt. 9 at 8, ¶ 21). Defendant Garcia could have stopped Defendant Kennedy and could have allowed Plaintiff to continue on. But he didn't and by failing to take any action to stop it, Defendant Garcia participated in the constitutional violation. This is enough to support a bystander claim against Defendant Garcia.

---

[4] Although production of the video of the incident would certainly shed light on the timing, Plaintiff tends to agree with Defendants that Defendant Kennedy resorted to deadly force so quickly that it would have been impossible for Defendant Garcia to stop it.

C.    **Plaintiff adequately pled claims against NISD.**

1.    **Pleading standard applicable to municipal liability claims.**

Stating a claim for municipal liability under Section 1983 (i.e., *Monell*[5] liability) requires alleging (1) a policymaker; (2) an official policy; and (3) that the policy is the "moving force" behind a violation of a constitutional right. *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018). An official policy can take the form of a written policy, ordinance, or regulation; or it can take the form of a widespread practice so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id*. at 389–90. These elements "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

Courts may not apply a heightened pleading standard to *Monell* claims, but also are not required to accept "generic or boilerplate" pleadings. *Ratliff v. Aransas Cty., Tex.,* 948 F.3d 281, 284 (5th Cir. 2020). Accordingly, *Monell* claims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Iqbal,* 556 U.S. at 678).

At the same time, courts recognize that, at the motion to dismiss stage (i.e., before discovery), it is incredibly rare that a plaintiff will have access to (or personal knowledge of) specific details about the existence or absence of internal policies or practices that led to the constitutional violation. *See Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011); *see also Brown v. City of Hous.*, 297 F. Supp. 3d 748, 767 (S.D. Tex. 2017); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017). Accordingly, while courts require "more than boilerplate allegations" and mere recitations of the elements, they have not required plaintiffs to plead "specific facts that prove the existence of a policy." *Schaefer v. Whitted*, 121 F. Supp. 3d

---

[5] *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658 (1978).

701, 718 (W.D. Tex. 2015) (emphasis added). Rather, a municipal liability claim satisfies federal pleading standards where it alleges at least some further detail, such as "the specific topic of the challenged policy or training inadequacy" that caused the injury. *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-CV-615, 2017 WL 2262778, at *4 (E.D. Tex. May 24, 2017); *see also Flanagan v. City of Dall.*, Tex., 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 550 (2007) and *Iqbal*).

A municipal-liability claim therefore satisfies the federal pleading standard if it describes, for instance: "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; (4) *the specific topic* of the challenged policy or training inadequacy," or (5) "misconduct that occurred in the open," "together with any additional elaboration possible." *Flanagan*, 48 F. Supp. 3d at 947. "Those types of details, together with any additional elaboration possible, help to (1) 'satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests;' and (2) 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* In *Brown*, for instance, the municipal liability allegations sufficient where the plaintiff: (1) identified the relevant policymakers—present and former district attorneys;[6] (2) identified the relevant policy or custom and practice—the "do whatever it takes" conviction culture; and (3) alleged that this policy of obtaining convictions at all costs was the "moving force" behind his unconstitutional conviction and injury. *Brown*, 297 F. Supp. 3d at 766. Plaintiff's municipal

---

[6] Defendants are not critical of Plaintiff for not identifying the relevant policymakers, nor should they be since Plaintiff adequately identifies them. (Dkt. 9 at 2, ¶ 3). Moreover, a plaintiff need not plead "the specific identity of the policymaker" to survive a motion to dismiss. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) ("the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.").

liability pleading in this case more than satisfies the minimal requirements necessary to survive Defendants' motion to dismiss.

### 2. Plaintiff identified the customs, practices and policies at issue.

Plaintiff clearly identified the specific topic of the custom or policy which was the "moving force" behind the constitutional injuries—the City's decision to hire and retain Kennedy despite Kennedy's prior issues at the Live Oak Police Department, (Dkt. 9 at 17), NISD's failure to provide its officers, including Kennedy, with any or adequate training regarding the constitutional limits on the use of force (*Id.* at 18), and NISD's failure to adequately discipline Kennedy or Garcia when they plainly violated Plaintiff's constitutional rights (*Id.* at 20-21). In other words, Plaintiff identified an abject failure on the part of NISD to consider an employee's prior employment history, the failure to train its officers on use of force, and then the failure to discipline its officers when the force used is unconstitutionally excessive. (*Id.* at 17-21).

These allegations are sufficient to provide NISD with "fair notice" of Plaintiff's municipal liability claims and the grounds on which they rest, as well as permit this Court to infer "more than the mere possibility of misconduct" by NISD regarding its various failures. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555 n. 3. More importantly, these allegations identify the specific topic of the alleged policy or training inadequacy. Accordingly, Plaintiff has adequately identified the custom, practice, or policy she contends is the moving force behind the constitutional violations at issue.

### 3. Plaintiff sufficiently alleges that NISD's policies, customs, and practices were the "moving force" behind the constitutional violations at issue.

As mentioned earlier, for municipal liability to attach, the NISD's inadequate, or nonexistent, hiring, training, and discipline customs and practices must be alleged to have been the "moving force" behind the constitutional violations suffered by Plaintiff. Plaintiff includes that allegation in her First

Amended Complaint. (Dkt. 9 at 16-17, ¶¶ 48, 50; at 19, ¶ 53). The facts alleged further back up this allegation.

To be the "moving force," there must be a direct causal link between the policy or custom on the constitutional violation, and the policy or custom must have been implemented with "deliberate indifference" to the "known or obvious consequence" that a constitutional violation would result. *Alvarez,* 904 F.3d at 390. "Deliberate indifference" generally requires more than just a single instance that causes a constitutional violation—rather, there needs to be some pattern of similar violations that is so clearly inadequate as to be obviously likely to result in a constitutional violation. *Westfall v. Luna,* 903 F.3d 534, 552 (5th Cir. 2018). A single-incident exception exists, but generally requires that the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of the particular policy. *Id.*; *Alvarez,* 904 F.3d at 390.

### (a)    NISD's failure to train its officers on use of force.

A failure to train officers with deliberate indifference to citizens' constitutional rights constitutes a policy or custom for the purposes of municipal liability. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). Without discovery, Plaintiff is unable at this time to allege "a pattern of similar constitutional violations." *See Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). However, Plaintiff's allegation of failure to train is sufficient under the single incident exception.

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. *Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.*

*City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (emphasis added); *see also Connick v. Thompson*, 563 U.S. 51, 63–71, (2011) (recognizing, but refusing to extend, the single-incident principle); *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) (same).

Here, Kennedy chose to shoot into a car at a high school football game while kids and parents were in line to enter the stadium. Firing into a car fundamentally violates the best police practices and the national standards because engaging in such practice could have resulted in the death of the driver and potentially an out-of-control vehicle or it could have resulted in innocent third parties being shot by Kennedy. Kennedy's use of a firearm in this manner and under these circumstances is an archetypical use of deadly force, and it is clearly established law that shooting an unarmed, unthreatening suspect is a Fourth Amendment violation which was plainly foreseeable, or should have been, to NISD when it failed to train its officers at all, or inadequately trained them, regarding how and when to use such force. The Supreme Court has explained that the need for this training, which Plaintiff plainly alleges was not provided to any of the NISD officers, is "so obvious" that even a single incident is sufficient to show "deliberate indifference" on the part of the municipality. *Harris*, 489 U.S. at 390 n.10. And, it is the lack of this exact type of training provided to these officers that was the "moving force" behind Kennedy's shooting of Plaintiff.

Ultimately, however, to survive the Defendants' motion, all Plaintiff had to do was identify the specific topic of the challenged policy or training inadequacy. *Sanchez*, 283 F. Supp. 3d at 532; *Flanagan*, 48 F. Supp. 2d at 947. Plaintiff's First Amended Complaint sets out that NISD's policy is to hire anyone, regardless of their background, and then provide no or inadequate training in the use of excessive and deadly force, proper arrest and confrontation techniques, and on appropriate methods and techniques to control situations like the one Kennedy encountered here. (*Id.* at 17-21). Given that, in *Brown v. City of Houston,* the plaintiff's identification of the relevant policy as the District

Attorney's office's "do whatever it takes" conviction culture, Plaintiff's identification of the policy at issue here is more than adequate. 297 F. Supp. 3d at 766.

(b)    <strong>NISD's failure to supervise and discipline its officers.</strong>

Failure to supervise and discipline officers can also give rise to municipal liability. "[M]unicipal policymakers who fail to supervise and to discipline their police officers, acting with deliberate indifference to the citizen's rights, could create municipal liability if the lack of supervision causes a deprivation." *Milam v. City of San Antonio,* 113 F. App'x 622, 628 (5th Cir. 2004). "[E]ven though a policymaker's response to a particular incident may not cause the injury, the response might provide evidence of the content of a municipality's policies. That is, the failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy." *Id.* Plaintiff has alleged a sufficient claim here too.

Plaintiff pleaded as follows:

> 54.    Defendant NISD then ratified Defendants KENNEDY and GARCIA's conduct by failing or refusing to discipline these officers or even provide them additional training. Both officers remain employed by Defendant NISD today, even after one of them (Defendant KENNEDY) was criminally indicted for his conduct *in this case.* The NISD's after-the-fact ratification shows that the NISD supported these unconstitutional actions at the time they occurred.

> 55.    The NISD's conduct confirms that the NISD affirmatively acquiesced in, adopted, or sanctions the Officers' conduct and failed to actively enforce its own policies and procedures. It also tends to suggest that it and other policymakers found no inadequacies in the officer's conduct. Such affirmative official action lends itself to the distinct possibility that similar situations that present the potential for constitutional rights violations will occur again in the future because the NISD has tacitly approved of this type of conduct.

> 56.    When the NISD failed and refused to discipline the Officers for their clearly established constitutional violations, it approved of and ratified that conduct, which itself establishes a custom of the NISD. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

> When an entity like the NISD approves a subordinate's conduct and the basis for it, liability for that conduct is chargeable against the entity because it has "retained the authority to measure the official's conduct for conformance with their policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016); *see also Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017). Under *Praprotnik*, "post hoc ratification by a final policymaker is sufficient to subject a city to liability because decisions by final policymakers are policy."

> 57. The failure of the NISD to punish the Defendant Officers or to make any reasonable attempt to implement meaningful changes in light of Plaintiffs injuries emphasizes the point that this is how things have always been done and the NISD approves of it. The Officers violated Plaintiff's constitutional rights in an egregious manner, which resulted in Plaintiff being seriously and permanently injured. This inexcusable use of deadly force at a school function resulted in no disciplinary action, no retraining, and no reevaluation of policies by the NISD. By doing nothing, the NISD ratified the Defendant Officers' conduct.

(Dkt. 9 at 20-21). Kennedy shot Plaintiff who had done nothing wrong and was a threat to no one. In the process, he threatened her life and the lives of everyone around her, despite the unmistakable duty "to put [his] own safety at risk to protect the public from accident, injury, or even death." *VIA Metro. Transit*, 397 S.W.3d at 707. Kennedy did exactly the opposite. And when NISD failed to discipline Kennedy, it tacitly approved of his conduct.

**(c)    NISD's hiring of Kennedy.**

Finally, with regard to Kennedy's hiring, Plaintiff alleges that NISD wholly ignored his failures at the Live Oak Police Department that demonstrated he was not fit to be a peace officer. (Dkt. 9 at 18-19, ¶ 52). Although a single incident, this failure evidences deliberate indifference on the part of NISD.

Typically, a single instance of inadequate screening of a new-hire candidate like Kennedy is not enough to establish "deliberate indifference." *See Bd. of Cty. Comm'rs of Bryan Cty., Ok. v. Brown,* 520 U.S. 397, 411 (1997). However, "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision

to hire the applicant would be the deprivation of a third party's federally protected right," the failure to adequately scrutinize—i.e., the decision to hire—can constitute "deliberate indifference." *See id.*

Here, NISD knew or should have known that Kennedy was not fit to serve. Any reasonable policymaker can conclude that an applicant for peace officer who has demonstrated "concerning" "safety and decision making skills" to the point that Kennedy could "become injured or possibly injure someone else" will end up depriving a third party of her constitutionally protected rights. That is exactly what happened here when Kennedy was hired and, predictably, shot an innocent person. Plaintiff has sufficiently alleged this claim as well.

**D.    Finally, and alternatively, if this Court finds Plaintiff's claims deficient in any respect, Plaintiff seeks leave to amend her First Amended Complaint.**

As noted in detail above, Plaintiff believes she had adequately pled claims against all three Defendants. Thus, the motion should be denied.

However, in the event that this Court believes that Plaintiff's First Amended Complaint is deficient in some respect, Plaintiff respectfully requests that she be granted leave to amend the complaint.[7] Federal Rule of Civil Procedure Rule 15(a) mandates that "'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his

---

[7] Plaintiff acknowledges this Court's standing order as it relates to Rule 12(b)(6) motions and the fact that Plaintiff already amended its complaint in response to Defendants' notice that they intended to file such a motion. However, that amendment was done largely to update the facts since, by then, Kennedy had been criminally indicted. While Defendants did email Plaintiff to inform her counsel that they intended to file a Rule 12(b)(6) motion, that email did not provide any significant detail as to the "proposed deficiencies and the expected basis of [Defendants'] motion." (Dkt. 3); *see also* Ex. 1 (email from K. Payne). Thus, the simple fact that Defendants invoked the procedure provided by that standing order should not prohibit Plaintiff from seeking leave to amend her complaint in the event this Court finds some aspect of it deficient.

claim on the merits." *Foman*, 371 U.S. at 182. Thus, leave should be given unless some combination of the following factors weighs heavily against amendment: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by prior amendment; (4) undue prejudice to the opposing party; and (5) the futility of the amendment. *See U.S. ex rel. Hebert v. Dizney,* 295 F. App'x 717, 724 (5th Cir. 2008). Here, none of these factors are present and, accordingly, in the event this Court believes that Plaintiff's allegations are deficient in some respect, Plaintiff ask that she be granted leave to amend their Complaint.

### III.    Prayer

For these reasons, Plaintiff Markay Garcia respectfully requests that this Court deny the Defendants' motion to dismiss or, if it is of the opinion that Plaintiff's First Amended Complaint is deficient in some respect, give Plaintiff the opportunity to amend it.  Plaintiff further requests such other relief to which she may be justly and equitably entitled.

Respectfully submitted,

RODRIGUEZ TRIAL LAW
231 W. Cypress St.
San Antonio, Texas 78212
(210) 777-5555; Telephone
(210) 224-0533; Telefax
BY:    *S/ FIDEL RODRIGUEZ, JR.*
       FIDEL RODRIGUEZ, JR.
       State Bar No. 17145500
       FIDEL RODRIGUEZ, III
       State Bar No. 24081924

LANG LAW FIRM, P.C.
Northwest Atrium
11550 IH-10 West, Ste. 273
San Antonio, Texas 78230
(210) 783-0322; Telephone
(210) 479-0099; Telefax
BY:    *S/ SYLVAN S. LANG, JR.*
       SYLVAN S. LANG, JR.
       State Bar No. 11898700
       BRIAN M. DENNIS

State Bar No. 24039970
MEAGAN M. GILLETTE
State Bar No. 24050659

DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000; Telephone
(214) 946-8433; Telefax
BY:    */S/ THAD D. SPALDING*
THAD D. SPALDING
State Bar No. 00791708
SHELBY J. WHITE
State Bar No. 24084086

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on **January 7, 2025**, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing ("ECF") system of the Court. The following counsel of record were served via electronic service through the ECF system.

D. Craig Wood, cwood@wabsa.com
Katie E. Payne, kpayne@wabsa.com
**WALSH GALLEGOS KYLE ROBINSON & ROALSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
*Attorneys for Defendants*

*/S/ Thad D. Spalding*
Thad D. Spalding