UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MARKAY GARCIA,**

   *Plaintiff*,

**v.**                                                    **Case No. 5:24-CV-01099-JKP**

**NORTHSIDE INDEPENDENT
SCHOOL DISTRICT, KYLE KENNE-
DY, JOSEPH GARCIA,**

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Kyle Kennedy, Joseph Garcia, and Northside Independent School District's (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *ECF No. 16*. Plaintiff Markay Garcia filed a Response to which Defendants filed a Reply. *ECF Nos. 17, 19*. Upon consideration, the Court concludes Defendants' Motion shall be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case arises out of injuries Plaintiff Markay Garcia allegedly sustained while attempting to park her vehicle at a high school football game. *ECF No. 9*. The facts, taken from Markay Garcia's First Amended Complaint and in the light most favorable to her, are as follows.

At approximately 1:30 p.m. October 28, 2023, Markay Garcia drove her vehicle into the NISD Dub Farris Athletic Complex (the "Stadium") parking lot. *Id. at 4*. After entering the parking lot, Markay Garcia approached a crosswalk at the entrance of the Stadium. *Id. at 5*. Markay Garcia stopped her vehicle behind a line of other vehicles waiting for pedestrians to walk across the crosswalk. *Id. at 5*

*View of Parking Lot, Home Team Entrance Gate, and Crosswalk Looking South:*



*Id. at 5*. At the crosswalk, Northside Independent School District Officers Kyle Kennedy ("Officer Kennedy") and Joseph Garcia ("Officer Garcia") conducted traffic. *Id. at 6*.

After waiting for pedestrians to walk across the crosswalk, three vehicles in front of Markay Garcia drove through the crosswalk without being stopped by Officer Kennedy or Officer Garcia. *Id. at 6–7*. As Markay Garcia began to drive through the crosswalk, however, Officer Kennedy positioned himself in front of her vehicle causing her to stop. *Id. at 7*. At the same time, Officer Garcia moved to the passenger side of Markay Garcia's vehicle, began knocking on the window, and yelling for Markay Garcia to "calm down." *Id. at 7*. Markay Garcia rolled the passenger window down and responded she was calm. *Id. at 7*. When Officer Kennedy and Officer Garcia stopped her, Markay Garcia alleges there were no pedestrians in the crosswalk, she broke no laws, and was not a threat to anyone, including the officers. *Id. at 7*.

Receiving no further instructions from Officer Kennedy or Officer Garcia, Markay Garcia again began to drive through the crosswalk. *Id. at 7*. Officer Kennedy then repositioned himself to block Markay Garcia's vehicle from passing, causing her to stop again. *Id. at 7–8*. Officer Garcia approached once more, this time from the driver's side. *Id. at 8*. Officer Garcia yelled for Markay Garcia to "get out of the vehicle." *Id. at 8*. Markay Garcia rolled the driver's side window down and responded there was no reason to get out of the vehicle *Id. at 8*. At the same, Officer Kennedy, who remained standing in front of Markay Garcia's vehicle, also began yelling at Markay Garcia. *Id. at 8*. While yelling, Officer Kennedy threw a water bottle on the ground with his right hand and positioned his left hand on his service firearm. *Id. at 8*.

Officer Garcia then reached inside Markay Garcia's open driver's side window. *Id. at 8*. Officer Garcia's action startled Markay Garcia, causing her to release her foot off the vehicle's brake pedal. *Id. at 8*. As a result, Markay Garcia's vehicle moved slightly forward. *Id. at 8*. Markay Garcia immediately attempted to return her foot to the brake pedal to stop the vehicle's movement. *Id. at 8*. At this point, Officer Kennedy left the front of Markay Garcia's vehicle and walked to the driver's side, approaching Officer Garcia and Markay Garcia. *Id. at 8–9*.

Suddenly and unexpectedly, Officer Kennedy unholstered his service firearm, pointed it at Markay Garcia, and pulled the trigger, shooting Markay Garcia at point-blank range. *Id. at 9*. Markay Garcia alleges an injury—namely that the alleged seizure resulted in the bullet from Officer Kennedy's service firearm entering Markay Garcia's upper right arm, shattering and fracturing her humerus, destroying her triceps muscle, and causing permanent nerve damage. *Id. at 9*. Per Markay Garcia, Officer Kennedy made no effort to defuse the situation and immediately resorted to deadly force. *Id. at 9*. Officer Garcia, who did not draw his service firearm but wit-

nessed Officer Kennedy draw his, did nothing to stop Officer Kennedy from shooting Markay Garcia. *Id. at 9.*

In her First Amended Complaint, Markay Garcia asserts four causes of action. *ECF No. 9.* Markay Garcia sues: (1) Officer Kennedy and Officer Garcia, alleging violation of Markay Garcia's Fourth Amendment right to be free from unreasonable seizures; (2) Officer Kennedy, alleging violation of Markay Garcia's Fourth Amendment right to be free from excessive force; (3) Officer Garcia, alleging bystander liability for failing to intervene; and (4) Northside Independent School District, alleging municipal liability for, among other things, failing to train, supervise, or discipline Officer Kennedy and Officer Garcia. *Id. at 12–23.*

Defendants now move to dismiss Markay Garcia's First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *ECF No. 16.*

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate

"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998). "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

A Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to

amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## ANALYSIS

### I. Markay Garcia's Causes of Action Asserted Against Officer Kennedy and Officer Garcia

Markay Garcia sues: (1) Officer Kennedy and Officer Garcia, alleging violation of Markay Garcia's Fourth Amendment right to be free from unreasonable seizures; (2) Officer Kennedy, alleging violation of Markay Garcia's Fourth Amendment right to be free from excessive force; and (3) Officer Garcia, alleging bystander liability for failing to intervene. *ECF No. 9 at 12–23*. Officer Kennedy and Officer Garcia claim qualified immunity from suit. *ECF No. 16 at 3–6*.

#### A. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established'[1] at the time of the challenged conduct." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

##### 1. Unreasonable Seizure[2]

---

[1] The Court's analysis of the "clearly established" prong of the qualified immunity analysis is not limited to the cases cited by Plaintiff. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994).

[2] While Markay Garcia styles this cause of action as a violation of Markay Garcia's "Fourth Amendment Constitutional Protection from Unreasonable Searches and Seizures," her First Amended Complaint does not allege—and her Response does not discuss—any search of Markay Garcia. *See ECF Nos. 9, 17*. To the extent Markay Garcia pleads such a cause of action, the Court considers it abandoned and it is dismissed. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff abandoned claim when she failed to defend it in response to motion to dismiss).

In her First Amended Complaint, Markay Garcia alleges Officer Kennedy and Officer Garcia violated her Fourth Amendment right to be free from unreasonable seizures because the Officers stopped her "for no lawful reason." *ECF No. 9 at 14*. In Defendants' Motion to Dismiss, Officer Kennedy and Officer Garcia counter the stop was justified. *ECF No. 16 at 8–9*.

The Fourth Amendment guarantees the right to be free from unreasonable seizures. U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1 (1968). "A *Terry* stop is a special category of Fourth Amendment seizures, in which an officer may briefly detain an individual for further investigation, if the officer has reasonable suspicion the individual is engaged in criminal activity." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (citations and internal quotation marks omitted).

The Court "analyze[s] the constitutionality of a traffic stop using the two-step inquiry set forth in *Terry v. Ohio*." *United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017) (citation omitted). At the first step, "[the Court] determines whether the stop was justified at its inception." *Id*. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id*. Reasonable suspicion can rest upon a mistake of law or fact if the mistake is objectively reasonable.[3] Assuming the stop was justified, the Court moves to the second step, where the Court determines "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id*. (quotation marks omitted). "A traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id*. (quotation marks omitted).

---

[3] *United States v. Alvarado–Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (first citing *Heien v. North Carolina*, 574 U.S. 54, 60 (2014); then citing *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)).

On the first prong, Officer Kennedy and Officer Garcia maintain "the facts alleged by Plaintiff show that [the] stop was justified because Plaintiff failed to comply with the orders and direction of Officer Kennedy and [Officer] Garcia while they were conducting traffic control at the [S]tadium." *ECF No. 16 at 9*. A reasonable suspicion exists where an officer can "point to specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant [the seizure]." *Degenhardt v. Bintliff*, 117 F.4th 747, 753 (5th Cir. 2024) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). Officers are permitted to make "commonsense judgments and inferences about human behavior." *Id.* (citing *Kansas v. Glover*, 589 U.S. 376, 380–81 (2020)). Specifically, Officer Kennedy and Officer Garcia maintain Markay Garcia failed to comply with two instructions: (1) Officer Garcia's instruction to "calm down;" and (2) Officer Garcia's instruction to "get out of the vehicle." *ECF No. 9 at 9*.

The facts alleged in Markay Garcia's First Amended Complaint contradict Officer Kennedy and Officer Garcia's basis for initiating the traffic stop. *See ECF No. 9 at 6–7*. At the motion to dismiss stage, the Court is required to "accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiffs." *Degenhardt*, 117 F.4th at 754 (citing *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016)) (internal quotation marks omitted).[4] The facts alleged in Markay Garcia's First Amended Complaint indicate, after waiting for pedestrians to walk across the crosswalk, three vehicles in front of Markay Garcia drove through the crosswalk without being stopped by Officer Kennedy or Officer Garcia. *ECF No. 9 at 6–7*. As Markay Garcia began to drive through the crosswalk, however, Officer Kennedy positioned him-

---

[4] One relevant exception to this default rule of assuming the truth of the plaintiff's allegations in the face of a motion to dismiss is "[i]f an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.'" *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)). This exception is not relevant here as Defendants attach no exhibits, such as body camera footage, to their Motion to Dismiss. *See ECF No. 16*.

self in front of her vehicle causing her to stop. *Id. at 7*. At the same time, Officer Garcia moved to the passenger side of Markay Garcia's vehicle, began knocking on the window, and yelling for Markay Garcia to "calm down." *Id. at 7*. Markay Garcia rolled the passenger window down and responded she was calm. *Id. at 7*. When Officer Kennedy and Officer Garcia stopped her, Markay Garcia alleges there were no pedestrians in the crosswalk, she broke no laws, and was not a threat to anyone, including the officers. *Id. at 7*. Thus, the facts alleged in Markay Garcia's First Amended Complaint do not provide a basis for finding the stop justified at its inception.

Finding Markay Garcia pleads facts showing Officer Kennedy and Officer Garcia violated a constitutional right,[5] the Court proceeds to the "clearly established" prong of the qualified immunity analysis.

In Defendants' Motion to Dismiss, Officer Kennedy and Officer Garcia assert Markay Garcia must meet "heightened pleading requirements" in this context but, in the time since the filing of Defendants' Motion to Dismiss, the Fifth Circuit readdressed the appropriate pleading standard. *ECF No. 16 at 4–5*; *see Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025). Relevant here, in its opinion issued April 4, 2025, the Fifth Circuit instructed:

> A court must "carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). To be sure, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate" at the motion to dismiss stage. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).
>
> However, "an assertion of qualified immunity . . . **does not subject the complaint to a heightened pleading standard**." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Thus, "[an] immunity-from-suit interest does not require that the plaintiff's original complaint exceed the . . . standard of Rule 8" of the Federal Rules of Civil Procedure. *Id.* "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead '*facts* which, if proved,

---

[5] *E.g.*, *Garcia v. Harris Cnty.*, No. 4:16-CV-02134, 2017 WL 2405330 at *7–8 (S.D. Tex. June 2, 2017); *Flynt v. Jasper Cnty., Mississippi*, No. 2:20-CV-00180, 2022 WL 4809405 at *5 (S.D. Miss. Sept. 30, 2022).

would defeat [the] claim of immunity.'" *Guerra*, 82 F.4th at 285 (emphasis added) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). And the district court must "do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).

The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to "identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 510 U.S. 510, 514 [] (1994). The operation of such a rule would be unpredictable in advance of the district court's adjudication and would "simply release[ ] defendants because of shortages in counsel's or the court's legal research or briefing." *Id.*

*Santander*, 133 F.4th at 478 (emphasis added) (determining district court erred in dismissing excessive force claim due to plaintiff's failure to proffer legal authority in his complaint). *Santander* in mind, the Court considers if Markay Garcia pleads facts showing the rights she invokes were "'clearly established' at the time of the challenged conduct." *Id.* (citing *Ashcroft*, 563 U.S. at 735).

There is a clearly established right to be free from unreasonable seizures under the Fourth Amendment. *Heaney v. Roberts*, 846 F.3d 795, 804 (5th Cir. 2017). At the time Officer Kennedy and Officer Garcia stopped Markay Garcia, it had been clearly established for more than fifty years officers cannot seize a person without reasonable suspicion of a crime.[6] *See Terry*, 392 U.S. at 1; *E.g., Jones-Macdonald v. Harris Cnty.*, No. 4:23-CV-02871, 2024 WL 4354704 at *7 (S.D. Tex. Sept. 30, 2024). The facts alleged in Markay Garcia's First Amended Complaint indicate any failure on Markay Garica's part to comply with Officer Garcia's two instructions occurred after Officer Kennedy positioned himself in front of her vehicle causing her to stop. *ECF No. 9 at 6–7*. Per Markay Garcia there was no investigation on the part of Officer Kennedy or

---

[6] The Court recognizes as well, "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." *U.S. v. Sokolow*, 490 U.S. 1, 10 (1989) (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)).

Officer Garcia prior. Undoubtedly additional facts will surface as this case proceeds, however—as alleged—no reasonable officer could believe Markay Garcia was stopped for failing to follow Officer Garcia's two instructions because the two instructions came after Officer Kennedy and Officer Garcia stopped her. Therefore, accepting Markay Garcia's facts alleged as true, Officer Kennedy and Officer Garcia stopped her without reasonable suspicion,[7] which violated a clearly established right.

To the extent Officer Kennedy and Officer Garcia challenge the sequence of events, timing of the stop, and reasonableness of their conduct now, the Court notes it is premature to resolve factual disputes on a motion to dismiss.

Accordingly, Defendants' Motion to Dismiss in this regard is denied.

### 2.    Excessive Force

In her First Amended Complaint, Markay Garcia alleges Officer Kennedy violated her Fourth Amendment right to be free from excessive force. *ECF No. 9 at 12–13*. In Defendants' Motion to Dismiss, Officer Kennedy counters Markay Garcia's First Amended Complaint contains only conclusory allegations and a threadbare recitation of legal elements. *ECF No. 16 at 6–8*.

As stated, the Fourth Amendment guarantees the right to be free from unreasonable seizures. U.S. Const. amend. IV. Specifically, the Fourth Amendment protects the right to be free

---

[7] *See Haywood v. City of El Paso, Texas*, No. 3:20-CV-00114, 2021 WL 5072029 at *8 (W.D. Tex. Oct. 26, 2021) (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017) (finding plaintiff stated a claim for unlawful detention when officers stopped and removed him from his vehicle without reasonable suspicion he had committed or was about to commit a crime)); *Cunningham v. Felix*, No. 3:16-CV-02120, 2017 WL 1194468 at *4 (N.D. Tex. Mar. 9, 2017) (finding plaintiff alleged sufficient facts showing "the traffic stop was not justified at its inception and that the troopers lacked reasonable suspicion to justify Plaintiff's detention"); *Garcia*, 2017 WL 2405330 at *7 ("Accepting the fact that Garcia did not violate any traffic laws as true, the officers had no reasonable suspicion to perform the traffic stop, and consequently, any subsequent search or seizure would be a violation of Garcia's rights."); *Webb v. Jordan*, No. 5:13-CV-01121, 2013 WL 4784104 at *2 (W.D. La. Sep. 5, 2013) (finding plaintiff plead sufficient facts to overcome the qualified immunity defense at the pleadings stage by alleging plaintiff "was not breaking any traffic laws, nor had she been drinking, when she was pulled over and therefore Officer Jordan has no objective reason to detain her").

from excessive force during a seizure. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021) ("[f]or purposes of liability under 42 U.S.C. § 1983, excessive force claims arising from an investigatory stop invoke the protection provided by the Fourth Amendment of the United States Constitution against 'unreasonable seizure.'"). Although an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, *Graham v. Connor*, 490 U.S. 386, 396 (1989), a violation of this right occurs when a seized person suffers an injury which results directly and only from a clearly excessive and objectively unreasonable use of force. *Joseph*, 981 F.3d at 332; *see also Windham v. Harris Cnty.*, 875 F.3d 229, 242 (5th Cir. 2017).

"To prevail on an excessive force claim, a plaintiff must show '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Windham*, 875 F.3d at 242 (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Determining whether force was excessive or unreasonable is a necessarily fact-intensive and case-specific inquiry, and the test for reasonableness is not capable of precise definition or mechanical application. *Joseph*, 981 F.3d at 322. The analysis "requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake." *Tucker*, 998 F.3d at 171.

Officer Kennedy maintains Markay Garcia's First Amended Complaint "includes 'virtually no facts . . . [regarding] . . . whether the officer[']s conduct was unreasonable," but again the facts alleged in Markay Garcia's First Amended Complaint contradict this. *ECF No. 16 at 6*. Markay Garcia alleges an injury—namely that the alleged seizure resulted in the bullet from Officer Kennedy's service firearm entering Markay Garcia's upper right arm, shattering and frac-

turing her humerus, destroying her triceps muscle, and causing permanent nerve damage. *ECF No. 9 at 9*. Further, Markay Garcia alleges her injury resulted from use of force that was excessive to the need. *Id. at 12*. Specifically, Markay Garcia alleges "[d]espite [Officer Kennedy's] knowledge that [Markay Garcia] was not an immediate threat, was not suspected of a crime, did not have a weapon in her vehicle and was not suspected of having a weapon, and despite the almost certain risk of shooting other innocent bystanders, including children . . . [Officer Kennedy] acted objectively unreasonably when he drew his service firearm and shot [Markay Garcia]." *Id. at 10*. Thus, the facts alleged in Markay Garcia's First Amended Complaint provide a basis for finding Officer Kennedy's use of deadly force was objectively unreasonable.

Finding Markay Garcia pleads facts showing Officer Kennedy and Officer Garcia violated a constitutional right,[8] the Court proceeds to the "clearly established" prong of the qualified immunity analysis.

There is a clearly established right to be free from excessive force during a *Terry* stop under the Fourth Amendment. *Tarver v. City of Edna*, 410 F.3d 745, 754 (5th Cir. 2005). At the time of Markay Garcia's injury, it had been clearly established "an officer violates the Fourth Amendment if he [or she] abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017); *Deville v. Marcantel*, 567 F.3d 156, 167–69 (5th Cir. 2009) (finding qualified immunity inappropriate where, taking the facts in the light most favorable to the plaintiff, an officer making a minor traffic stop overpowered an individual

---

[8] *E.g., Tippitt v. Iverson*, No. 6:23-CV-00515, 2024 WL 823227 at *6 (E.D. Tex. Feb. 2, 2024), *R. & R. adopted*, No. 6:23-CV-00515, 2024 WL 818354 (E.D. Tex. Feb. 27, 2024).

who displayed, at most, passive resistance, and presented no safety threat or flight risk).[9] The Court observes the facts alleged in this case resemble other Fifth Circuit cases involving minor traffic violations.

In *Deville*, the Fifth Circuit determined the defendant officers were not entitled to qualified immunity for breaking the plaintiff's car window and "dragg[ing]" her out of her car when (1) the plaintiff was only stopped for a minor traffic violation, (2) she evinced no intent to flee or threaten the officers' safety, and (3) her resistance to the officer's commands was "at most, passive." *Deville*, 567 F.3d at 167–69.

Similarly, in *Hanks*, the Fifth Circuit determined the defendant officer was not entitled to qualified immunity for hitting the plaintiff in the back of the neck during a routine traffic stop when (1) the plaintiff was only stopped for a minor traffic violation (going 20 miles *under* the speed limit), (2) he posed no immediate threat of harm or risk of flight, and (3) he had only engaged in "passive resistance." *Hanks*, 853 F.3d at 747–48.

Finally, in *Doss v. Helpenstell*,[10] the Fifth Circuit determined the defendant officer was not entitled to qualified immunity for striking the plaintiff on the head with a pistol and forcibly extracting him when (1) the plaintiff was stopped by the officer while in his vehicle, (2) he "did nothing to suggest that he intended to flee" (despite having his hands on the steering wheel), and (3) while not immediately complying with the defendant officer's request to get out of the vehicle, he "did nothing to demonstrate hostile intent." 626 Fed. App'x. 453, 459–60 (5th Cir. 2015).

---

[9] *See also Doss v. Helpenstell*, 626 Fed. App'x. 453, 459–60 (5th Cir. 2015) (unpublished) (construing *Deville v. Marcantel*, 567 F.3d (5th Cir. 2009) as clearly establishing that an officer should receive no qualified immunity if he "quickly escalate[s]" an encounter with a non-threatening, passively-resisting driver who posed little risk of escape by employing overwhelming force "rather than continu[ing] to negotiate"); *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016) (citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); and *Deville*, 567 F.3d at 167–68) ("In denying qualified immunity, we have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force.")

[10] *See Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) (recognizing unpublished opinions cannot clearly establish the law but can illustrate or "guide [the Court] to such authority," by "restating what was clearly established in precedents they cite or elsewhere.")

Resembling *Deville*, *Hanks*, and *Doss*, Markay Garcia alleges (1) Officer Kennedy stopped her while in her vehicle; (2) she was unarmed, had not engaged in any criminal conduct, and did not pose a threat to officer safety; and (3) "was not actively resisting." *ECF No. 9 at 10–12*. Still, suddenly and unexpectedly, Officer Kennedy unholstered his service firearm, pointed it at Markay Garcia, and pulled the trigger, shooting Markay Garcia at point-blank range. *Id*. at 9.

Therefore, accepting Markay Garcia's facts alleged as true, Officer Kennedy abruptly resorted to overwhelming physical force—specifically deadly force—rather than continuing verbal negotiations with Markay Garcia, which violated a clearly established right.[11] In fact, based on Markay Garcia's version of events, Officer Kennedy's conduct was *less* justifiable than the conduct found to violate clearly established law in the cases discussed herein.

Again, to the extent Officer Kennedy challenges the sequence of events, timing of the stop, and reasonableness of his conduct now, the Court notes it is premature to resolve factual disputes on a motion to dismiss. In the context of the present motion, the Court does not have the benefit of a summary judgment record where evidence has been developed regarding the events at issue. Instead, the Court is ruling on a motion to dismiss where all allegations must be taken as true. "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396). That Officer Kennedy is not entitled to qualified immunity at this juncture does not preclude the Court from revisiting the issue later in the case.

Accordingly, Defendants' Motion to Dismiss in this regard is also denied.

### 3. Bystander Liability

In her First Amended Complaint, Markay Garcia alleges Officer Garcia failed to intervene to stop Officer Kennedy's alleged use of excessive force. *ECF No. 9 at 15–16*. In Defend-

---

[11] *See Tippitt*, 2024 WL 823227 at *7 (concluding the same).

ants' Motion to Dismiss, Officer Garcia counters Markay Garcia plead "the elements of a failure to intervene claim, without any factual enhancements or operative facts to cross the threshold into plausibility." *ECF No. 16 at 9–11.*

To prevail on a bystander liability claim, a plaintiff must show the officer "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph*, 981 F.3d at 343 (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)). More than mere presence is required in the vicinity of the violation, however: "[the Court] also considers whether an officer acquiesced in the alleged constitutional violation." *Id.* at 323 (quoting *Whitley*, 726 F.3d at 647).

Even assuming Officer Kennedy's alleged use of deadly force against Markay Garcia amounted to constitutionally excessive force, the factual allegations illustrate Officer Garcia cannot be held liable for this use of force under a bystander liability theory. To survive dismissal, Markay Garcia is required to allege with particularity Officer Garcia knew Officer Kennedy's actions were violating Markay Garcia's constitutional rights.[12] Per Markay Garcia, "[s]uddenly and unexpectedly, Officer Kennedy unholstered his service firearm, pointed it at Markay Garcia, and pulled the trigger . . . Officer Garcia, who did not draw his service firearm but witnessed Officer Kennedy draw his, did nothing to stop Officer Kennedy from shooting Markay Garcia." *Id. at 9*. Given the alleged speed with which the incident unfolded, the factual allegations cannot be reasonably construed to support the inference Officer Garcia "acquiesced in the alleged use of

---

[12] *E.g.*, *Martinez v. Texas Dept. of Crim. J.*, No. 2:23-CV-00131, 2024 WL 5111975 at *13 (S.D. Tex. Nov. 12, 2024), *R. & R. adopted sub nom. Martinez v. Trevino*, No. 2:23-CV-00131, 2024 WL 5110066 (S.D. Tex. Dec. 13, 2024); *Buehler v. City of Austin*, No. 1:17-CV-00724, 2018 WL 4225046 at *7 (W.D. Tex. Sept. 5, 2018) (dismissing bystander liability claim where plaintiff failed to plead with particularity that defendant officers, who were present at and observed arrest, knew excessive force was being used or that the officers had a reasonable opportunity to stop it).

excessive force." *See, e.g. Douglas v. DePhillips*, No. 2:17-CV-02305, 2017 WL 4574422 at *11 (E.D. La. Oct. 13, 2017), *aff'd*, 740 Fed. App'x. 403 (5th Cir. 2018) (unpublished) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).[13] Further, there are no non-conclusory factual allegations establishing Officer Garcia could be found to have known Officer Kennedy was going to use deadly force or that Officer Garcia would have had a reasonable opportunity to act to intervene.

The Court notes its analysis is supported by Markay Garcia's Response to Defendants' Motion to Dismiss. *See ECF No. 17 at 18 n.4*. In the Response, Markay Garcia states "Plaintiff tends to agree with Defendants that Defendant [Officer] Kennedy resorted to deadly force so quickly that it would have been impossible for Defendant [Officer] Garcia to stop it." *Id*.

Accordingly, Defendants' Motion to Dismiss in this regard is granted.

## II.    Markay Garcia's Causes of Action Asserted Against Northside Independent School District

### A.    Municipal Liability

The Court initially observes the portions of Markay Garcia's First Amended Complaint relating to her causes of action asserted against Northside Independent School District ("NISD") resemble a "shotgun pleading." The Court has recognized such a pleading is properly criticized. *See Valadez v. City of San Antonio*, No. 5:21-CV-00002-JKP, 2022 WL 1608016 at *5–8 (W.D. Tex. May 20, 2022). Both parties are hereby placed on notice of the Court's expectation arguments be presented in a clear and organized manner as this litigation proceeds.

In her First Amended Complaint, Markay Garcia alleges "Defendant NISD authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using be-

---

[13] *See Phillips v. Whittington*, No. 20-30731, 2022 WL 797418 at *9 (5th Cir. Mar. 14, 2022) (per curiam) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)) (in the context of an excessive force claim, examples of acquiescence include defendants standing by, laughing, and encouraging the use of force).

low minimum standards for hiring, re-hiring, screening, supervision, training, disciplinary and/or retention decisions regarding police officers like Defendant [Officer] Kennedy." *ECF No. 9 at 17*. In Defendants' Motion to Dismiss, NISD counters regardless of the theory, Markay Garcia's First Amended Complaint fails to demonstrate municipal liability. *ECF No. 16 at 11–17*.

The Court reads the portions of Markay Garcia's First Amended Complaint relating to her causes of action asserted against NISD as focused on failure to train and inadequate hiring theories of liability. *See ECF No. 9 at 16–21*. Markay Garcia's allegations regarding a failure to supervise theory of liability are wholly conclusory and therefore dismissed. *See ECF No. 9 at 2, 17, 18*. Further, because Markay Garcia did not respond to NISD's challenges to her ratification theory of liability—including addressing *Grandstaff v. City of Borger* and its progeny—the Court considers it abandoned and it is dismissed. 767 F.2d 161 (5th Cir. 1985); *see Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

### 1.    Failure to Train

To prevail on a failure to train claim, a plaintiff "must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." *See Speck v. Wiginton*, 606 Fed. App'x. 733, 736 (5th Cir. 2015) (unpublished) (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

Dismissal of Markay Garcia's conclusory failure to train claim is proper for at least two reasons. For one, the allegations do not satisfy the first element because she alleges no facts about NISD's actual training program. Complaints typically satisfy the first element by alleging facts related to the locality's actual training program.[14] Markay Garcia instead makes only the

---

[14] *See, e.g., Burge v. St. Tammany Parish,* 336 F.3d 363, 369 (5th Cir. 2003) (evaluating the longstanding practice of failing to maintain sheriff's records and provide them to defendants in context of claim challenging failure to train

conclusory allegation "NISD had a heightened obligation to train . . . its officers, including De-fendant [Officer] Kennedy, and failed to do so in the following areas" before listing topics such as "[u]se of force, excessive force, and deadly force" and "[d]e-escalation procedures, protocols, and techniques." *ECF No. 9 at 18*. She provides no factual allegations about the content of NISD's actual training program, how thorough or cursory it may have been, or even if one exists at all. Markay Garcia is thus asking the Court to make the inference that a single alleged incident of misconduct means officers are inadequately trained. "That inference is at odds with the law against *respondeat superior* liability in section 1983 cases, which is a rule premised on the com-mon sense proposition that officer misconduct is often a result of the independent decisions of officers rather than direction from superiors." *Speck*, 606 Fed. App'x at 736; *Sanders-Burns*, 594 F.3d at 380.

Similar reasoning demonstrates Markay Garcia also fails to raise sufficient factual allega-tions to meet the deliberate indifference standard. A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for pur-poses of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). No such pattern is al-leged here, even in a conclusory manner. An exception may exist if the plaintiff's injury is a "pa-tently obvious" or "highly predictable" result of inadequate training, and Markay asserts, for the first time, in her Response to Defendants' Motion to Dismiss that rare exception applies to this case. *See id.* at 63–64 (describing so-called "single-incident liability" as rare); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). The Fifth Circuit has consistently rejected nearly every at-

---

record keepers); *Beard v. Harris Cnty.*, No. 4:04-CV-01982, 2005 WL 2647972 at *3 (S.D. Tex. Oct.17, 2005) (considering the guidelines promulgated in the Standard Operating Procedures of the Harris County Precinct Five Constables Department); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (explaining that "a plaintiff must allege with specificity how a particular training program is defective" and "cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim").

tempt to use the single incident exception to demonstrate a constitutionally inadequate training program.[15]

Markay Garcia's First Amended Complaint does not clear the high hurdle to use the single incident exception. The Fifth Circuit has stated the single incident exception is "extremely narrow, and as an exception to the pattern requirement, it is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312–13 (5th Cir. 2023) (emphasis added).[16] Indeed, the Fifth Circuit has further stated an allegation the government actor was provided "no training whatsoever" is critical to surviving a motion to dismiss when relying on the single incident exception. *Littell v. Houston Independent School District*, 894 F.3d 616, 626–27 (5th Cir. 2018) (citing *Connick*, 563 U.S. at 64). Markay Garcia's First Amended Complaint contradicts this requirement by referring to "additional training" and "re-training." *ECF No. 9 at 18, 20*. However, even if these facts had not been included in Markay Garcia's First Amended Complaint, it would still fail. The Fifth Circuit has noted "there is a difference between *a complete failure to train* . . . and a failure to train in one limited area." *Cozzo v. Tangipahoa Parish Council—President Government,* 279 F.3d 273, 288 (5th Cir. 2002) (emphasis original); *see also Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005).

---

[15] *See Carmona v. City of Brownsville*, No. 1:23-CV-00084, 2023 WL 10366692 at *6 (S.D. Tex. Aug. 16, 2023), *R. & R. adopted*, No. 1:23-CV-00084, 2024 WL 472340 (S.D. Tex. Feb. 6, 2024), *aff'd*, 126 F.4th 1091 (5th Cir. 2025) (collecting twenty-nine Fifth Circuit cases).

[16] *E.g.*, *Chavez v. Brownsville Indep. Sch. Dist.*, No. 1:18–CV–00173, 2023 WL 7312515 at *9–10 (S.D. Tex. Sept. 28, 2023), *aff'd sub nom. Chavez as next friend for J.C. v. Brownsville Indep. Sch. Dist.*, No. 23-40640, 2025 WL 445045 (5th Cir. Feb. 10, 2025); *Neri v. City of San Benito, Texas*, No. 1:23-CV-00156, 2024 WL 4156718 at *5 (S.D. Tex. Aug. 22, 2024); *R. & R. adopted*, No. 1:23-CV-00156, 2024 WL 4149768 (S.D. Tex. Sept. 11, 2024); *Carmona*, 2023 WL 10366692 at *4; *McAlister v. Mgt. and Training Corp.*, No. 5:22-CV-00090, 2024 WL 4328897 at *6 n.2 (S.D. Miss. Apr. 29, 2024), *R. & R. adopted*, No. 5:22-CV-00090, 2024 WL 4751586 (S.D. Miss. Nov. 12, 2024); *Soto v. Monge*, 735 F. Supp. 3d 792, 809 (W.D. Tex. 2024); *Oliveria v. City of Jersey Village*, No. 4:21-CV-03564, 2023 WL 7222124 at *5 (S.D. Tex. Nov. 2, 2023).

Because Markay Garcia does not allege NISD provided Officer Kennedy no training whatsoever and appears to acknowledge Officer Kennedy received some training, Defendants' Motion to Dismiss in this regard is also granted.

### 2. Inadequate Hiring

To prevail on an inadequate hiring claim, a plaintiff must show "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of the third party's federally protected right." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997).[17] Further, there must be a finding that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation must be strong." *Id.* at 412 (emphasis in original). Finally, it is not sufficient to show that the policymaker read the employee's record and hired the employee with knowledge of his background. *Id.* at 414. "Such a decision may reflect indifference to [the employee's] *record*, but what is required is deliberate indifference to a plaintiff's constitutional right." *Id.* at 414–15 (emphasis in original).

In *Brown*:

[T]he plaintiff, who had been injured when a Sheriff's deputy had pulled her from her car, alleged that the decision to hire the deputy was a moving force in the deprivation of her constitutional rights. She claimed that the Sheriff did not adequately review the deputy's background before hiring him. The deputy's record included driving infractions and guilty pleas to various driving-related and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness. *Id.* at 401. The Supreme Court found that this record was not enough to make it plainly obvious that the consequence of hiring the deputy would be the particular injury alleged. Specifically, the Court made it clear that liability based on the decision to hire someone "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412.

---

[17] *E.g.*, *Walker v. City of Dallas*, No. 3:23-CV-00391, 2024 WL 2734951 at *6 (N.D. Tex. May 28, 2024); *see also Adams v. City of Balcones Heights*, No. 3:03-CV-00219-XR, 2004 WL 1925444 at *5 (W.D. Tex. Aug. 27, 2004).

> The deputy's record did not reflect on the likelihood that he would use excessive force in making an arrest.

*Adams v. City of Balcones Heights*, No. 3:03-CV-00219-XR, 2004 WL 1925444 at *5 (W.D. Tex. Aug. 27, 2004) (citing *Brown*, 520 U.S. at 401, 412).

Dismissal of Markay Garcia's inadequate hiring claim is proper as she does not allege the requisite strong connection between Officer Kennedy's background and the particular injury suffered. *"Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Brown*, 520 U.S. at 415. Markay Garcia's First Amended Complaint alleges Officer Kenney's personnel file from his prior employer, the City of Live Oak Police Department, showed he had "received numerous written criticisms and concerns about safety while handling calls for service and traffic complaints" and that his "safety and decision making skills were concerning to the point where [he] could become injured or possibly injure someone else." *ECF No. 9 at 18–19*. Notably, however, Markay Garcia pleads no facts that Officer Kennedy had a history of excessive or deadly force violations such that any excessive or deadly force he used against Markay Garcia was an obvious consequence of any deficient hiring process by NISD.

Because Markay Garcia does not allege facts that would make it "plainly obvious" to an official screening his background that Officer Kennedy would be likely to commit the acts in question, Defendants' Motion to Dismiss in this regard is also granted.[18]

---

[18] *See Wilson v. Baucom*, No. 1:20-CV-00311, 2021 WL 7081523 at *5 (W.D. Tex. Jan. 25, 2021) (citing *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 226 (5th Cir. May 15, 2020)), *R. & R. adopted as modified*, No. 1:20-CV-00311, 2021 WL 7081438 (W.D. Tex. Mar. 23, 2021) (dismissing inadequate hiring claim where Plaintiff

### III.    Markay Garcia's Request for Leave to Amend

Despite Defendants' compliance with the *Standing Order in Civil Cases Assigned to Judge*

*Jason Pulliam*, (*see ECF No. 3*), Markay Garcia requests for leave to amend, stating:

> While Defendants did email Plaintiff to inform her counsel that they intended to file a Rule 12(b)(6) motion, that email did not provide any significant detail as to the "proposed deficiencies and the expected basis of [Defendants'] motion."

*ECF No. 17 at 26 n. 7*. Markay Garcia attached the email to Markay Garcia's Response to De-

fendants' Motion to Dismiss. *ECF No. 17-1*. In the email, regarding her cause of action against

Officer Garcia, alleging bystander liability for failing to intervene, Defendants wrote:

> Plaintiff's Original Complaint also fails to state a claim against Defendant Garcia for bystander liability for Defendant Kennedy's alleged excessive use of force. Taking Plaintiff's allegations as true, she has failed to show that Garcia knew that Kennedy was violating her rights, that he had a reasonable opportunity to prevent the harm, or that he chose not to act. Her pleading is furthermore deficient in that it fails to show that Garcia acquiesced in the alleged constitutional violation, nor that he had a constitutional duty to intervene. Defendant Garcia retains his quali-fied immunity from suit because Plaintiff has failed to show that he acted objec-tively unreasonable in light of clearly established law.

*Id. at 2–3*. Regarding her cause of action against Northside Independent School District, alleging

municipal liability for, among other things, failing to train, supervise, or discipline Officer Ken-

nedy and Officer Garcia, Defendants wrote:

> Plaintiff's Original Complaint also fails to state a claim against Defendant Northside ISD, in the first instance because it fails to state a claim for underlying constitutional violation, and also because she has failed to state a claim for munic-ipal liability under either her failure to train/supervise/discipline or unconstitution-al hiring theories. Plaintiff's allegations fail to show that an official policy or cus-tom was the moving force behind her alleged constitutional violation, nor that the policymaker for the District adopted such policy or custom with deliberate indif-ference to Plaintiff's constitutional rights, nor that a causal link exists between the failure to train/supervise or unconstitutional hiring and the alleged violation of her rights.

---

pleaded no facts that defendant officer had a history of excessive force violations); *Adams*, 2004 WL 1925444 at *5–6.

*Id. at 3*. As to these causes of action, Defendants' email provided Markay Garcia detailed and explicit notice of the proposed deficiencies. Accordingly, Markay Garcia will not be allowed an additional opportunity to amend her First Amended Complaint on these causes of action. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002).

## CONCLUSION

Having considered Defendants' Motion to Dismiss Plaintiff Markay Garcia's First Amended Complaint for failure to state a claim, (*ECF No. 16*), the record, and the relevant law, the Court concludes Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

Markay Garcia's causes of action against Officer Garcia, alleging bystander liability for failing to intervene, and against Northside Independent School District, alleging municipal liability for, among other things, failing to train, supervise, or discipline Officer Kennedy and Officer Garcia are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to terminate Northside Independent School District as a Defendant as it is **DISMISSED** from this action.

Markay Garcia's causes of action against Officer Kennedy and Officer Garcia, alleging violation of Markay Garcia's Fourth Amendment right to be free from unreasonable seizures and Officer Kennedy, alleging violation of Markay Garcia's Fourth Amendment right to be free from excessive force shall proceed. The Clerk of Court is therefore **DIRECTED** to administratively reopen this case.

It is so ORDERED.
SIGNED this 23rd day of June, 2025.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE